ELBERS & KRAFFTS *against* THE UNITED INSURANCE COMPANY.

A. and B. were *Swedish* subjects, and partners in trade at *St. Bartholomews.*

THIS was an action of *assumpsit* on a policy of insurance, dated the 26th of *July*, 1813, underwritten by the defend-

In 1811 B. came to the *United States,* and in *July*, 1813, B. still continuing in the *United States,* a policy of insurance was underwritten, on account of A. and B., on cargo, for a voyage from *New Haven* to *St Bartholomews,* warranted *Swedish* property. *Held,* that from the long previous residence of B. in this country, it was to be presumed that he intended to reside here permanently; that it was incumbent on the insured to repel the presumption, which was not done in this case; that, whether B. had a permanent counting-house here, or not, was immaterial to the question, and, therefore, as B. was to be regarded as domiciled in the *United States,* that the warranty was not complied with, and the insured could not recover for a loss; but as the policy never attached, and there was no ground to presume fraud, a return of the premium was awarded.

The property of a citizen, or subject, of a neutral, domiciled in a belligerent country, is liable to capture and condemnation, as prize of war, by the other belligerent; and a warranty in a policy of insurance on such property, that it was neutral property, is not complied with.

ALBANY,
January, 1819.

ELBERS
v.
UNITED INS.
COMPANY.

ants, on a cargo laden on board the *Swedish* brig *Gustava*, for a voyage from *New-Haven* to *St. Bartholomews.* The policy contained a warranty, that the goods insured were *Swedish* property. The cause was tried before Mr. J. *Yates*, at the *New-York* sittings, in *December*, 1816.

The deposition of *F. G. Evers* was read at the trial, on the part of the plaintiffs. The witness stated, that, from *May*, 1814, until *May*, in the year following, he was in the counting-house of the plaintiffs, who were *Swedish burghers*, carrying on commercial business at *St. Bartholomews*, in the capacity of book-keeper ; and that, from several letters received by the plaintiffs while the deponent was in their employ, the deponent obtained knowledge of the fact, that previous to the month of *May*, 1814, the *Gustava* had sailed from *New-Haven* with a cargo consigned to the plaintiffs. The deponent further stated, that the *Gustava* had not arrived at *St. Bartholomews*, or been heard of, on or about the 17th of *May*, 1815, nor had she been heard of since, to the deponent's knowledge or belief. That the plaintiffs dissolved their partnership in *February*, 1814 ; that the plaintiff, *Kraffts*, had, before the witness arrived in *St. Bartholomews*, gone to the *United States* for the benefit of his health ; and that *Kraffts* transacted no business in the *United States*, except through the agency of others ; but that several shipments were made to the house of *Elbers & Kraffts* from the *United States*, under the superintendance of *Kraffts*, who was consulted by, and advised with, the agents here.

*Kraffts*, as appeared from the testimony of other witnesses, came to the *United States* in 1811 or 1812, for the benefit of his health, which, however, he soon recovered. He did not remain stationary in *New-York*, but was occasionally at *Philadelphia* and *Baltimore.* *G. & T. Myer* were the agents of *Elbers & Kraffts*, at *New-York ;* and *T. Myer* testified, that all orders received by his house, were from *Elbers & Kraffts*, and not from *Kraffts* alone ; but that *Kraffts* had a general superintendance of the business of his house in this country, and was acquainted by *G. & T. Myer*, with their transactions, in relation to the business of the house. The witness further stated, that he did not know that *Kraffts* ever made any purchases on account of his

house, except that on one occasion, he made a purchase of produce, from *G. & T. Myer*, which he shipped to *St. Bartholomews*. *Kraffts*, although consulted by *G. & T. Myer* in relation to the concerns of the house at *St. Bartholomews*, left them entirely to their management, without any interference on his part. The witness stated, that *Kraffts* mentioned to him that he wanted an agent at *Philadelphia*, whereupon the witness gave him letters to *Bohlen & Co.* of *Philadelphia*.

A verdict was found for the plaintiffs, subject to the opinion of the Court on the above case.

*T. A. Emmet*, for the plaintiffs, contended, that there was not sufficient evidence to show that *K.* had changed his *domicil*, or had acquired an *American* character. The burden of proof lies on the defendants, and they should prove a *residence* of *K.* in the *United States*, of that nature and duration, as would evince an intention to change his domicil. The original natural character is not changed by an occasional residence in another country, for a temporary purpose. It must be a residence taken *animo manendi*. Now, it is proved, that *K.* came to the *United States* for the benefit of his health, which had become impaired by a tropical climate ; that object would necessarily require a change of residence of some continuance. *K.* came to the *United States* in 1812, and this insurance was effected in *July*, 1813; and his original natural character would adhere to him, until it was clearly shown that he had changed it. (*Arnold & Ramsay* v. *United Ins. Co.* 1 *Johns. Cas.* 363. *Jenks* v. *Hallet & Bowne*, 1 *Caines' Rep.* 60. *Chitty's L. of N.* 38. 50. 1 *Rob. Adm. Rep.* 102. 1 *Acton,* 116.) At any rate, the plaintiffs will be entitled to a return of the premium.

*S. Jones,* jun. and *Hoffman,* contra. If *K.,* by his residence in the *United States,* acquired an *American* character, the warranty, in the policy, has not been complied with. All the evidence is derived from the plaintiffs' witnesses. The defendants produced no witnesses. It is said, that *K.* came to the *United States* for the purpose of regaining his

health; but it appears that it was soon restored.  Why did
he continue, afterwards, unless for commercial objects ?
He was the principal of the commercial house at *St. Bar-*
*tholomews.*  He established an agency for that house in
*Philadelphia.*  He directed a shipment to be consigned to
the plaintiffs at *St. Bartholomews.*  It does not appear that
he went to those places which are the usual resort of persons
whose object is the restoration of health.  He visited all
the great commercial towns.  It is manifest, that whatever
may have been his original intention, he continued to reside
here for the purpose of superintending and giving direc-
tions relative to the business of his house.  He must, on
the principles of law which have been established on this
subject, be considered as having changed his domicil.  If
so, the *American* character attached to all the commercial
transactions of the plaintiffs here.  It is a question of in-
tention ; and the residence of a month may be as good as a
year, to show the intention.  It was not shown that *K.* was a
*Swedish* born subject; but merely that *E. & K.* were resident
*Swedish burghers* at *St. Bartholomews.*  It is well known
that *Americans,* or *Englishmen,* may purchase these *burghers'*
*briefs* as easy as diplomas in a *Scotch* university.

Again ; war intervened between this country and *Great*
*Britain.*  Could *K.* have appeared in a *British* prize court,
and maintained that he was a *Swedish,* not an *American,*
citizen ? Certainly not.

Every question on this subject has been discussed, and
already settled in this court, or in the courts of the *United*
*States.*  If a person goes into another country and resides
there, his national character *quoad* his commercial transac-
tions will be changed ; and if war should intervene, he must
quit the country, or his continuance will be evidence of his
intention to remain, and to be considered a citizen of that
country.  The cases are very strict on this subject. (1 *Johns.*
*Cases,* 363.   1 *Caines,* 60.   1 *Rob. Adm. Rep.* 1.   The *Vi-*
*gilantia. Id.* The *Adriana,* 313.   The *Harmony,* 2 *Rob.*
*Adm. Rep.* 322.   The *Indian Chief,* 3 *Rob.* 12.   The *Dree*
*Gebroeders,* 4 *Rob.* 232.   The *Diana,* 5 *Rob.* 60.   The
*Ocean,* 5 *Rob.* 91.   The *Boedes Lust,* 5 *Rob.* 233. 248.
The *President,* 5 *Rob.* 277.   *Jonge Klassina,* 5 *Rob.* 297.

ALBANY,
January, 1819.

ELBERS
v.
UNITED INS.
COMPANY.

*Wheaton on Captures*, 141. 157. The *Neptunus*, 6 *Rob.* 403. The *Ann Green*, 1 *Gallis*. *Rep.* 274. The *Joseph*, 1 *Gallis*. 545. The *Francis*, *id.* 614. 618. 7 *Cranch*, 542. The *Venus*, 8 *Cranch*, 253. The *Francis*, 8 *Cranch.* 335. 363. The *Rugen*, 1 *Wheat. Rep.* 65. *Mary and Susan*, 1 *Wheat. Rep.* 25. 2 *Wheat. Rep. Appendix* 1. 27, 28, 29.)

*Emmet*, in reply, said, the cases cited did not apply to this case. *K.* was a *neutral*, and the intervention of the war between the *U. S.* and *G. B.*, made no difference as to him. He was not bound to quit the country. He might stay or go, as he pleased, precisely as in time of peace.

It is true, that a residence for an indefinite period, connected with other circumstances, would be evidence of an intention to change his domicil; but what are those circumstances? They must be such as to show, that the party mingles himself with the business and affairs of the country. No doubt, one day's residence would be sufficient, if coupled with a declared intent permanently to reside in the country; otherwise, not. A neutral may be here for health or pleasure. The question is, has he come here for the purpose of business? Does he mingle himself with the business and concerns of the country?

SPENCER, J. delivered the opinion of the Court. The plaintiffs claim for a total loss, on the ground that the vessel, having sailed on the voyage, was never heard of afterwards; and a year and a day having elapsed; she is presumed to be lost. The claim is resisted, 1. Because there is no proof that the vessel ever sailed; 2. That there was a breach of the warranty, as to the *Swedish* ownership of the goods insured, *Krafts* having lost his *Swedish*, and acquired an *American* character, by being domiciled here.

This last point will be first considered. The plaintiffs had a mercantile establishment, as partners, in *St. Bartholomews*, several years prior to *February*, 1814; and it is proved, also, that *Krafts* came to this country for the recovery of his health, in 1811; and has ever since continued to reside here, being occasionally at *New-York*, *Philadelphia*, and *Baltimore*, having agents at those places, who generally

ALBANY,
January, 1819.

ELBERS
v.
UNITED INS.
COMPANY.

corresponded with, and transacted the business of the house of *Elbers and Krafts.* at *St. Barts ; Krafts* having, himself, in one instance, in 1813, made a purchase of produce for the house, which he shipped to it, when *Krafts* was present at *New-York;* that his agents there advised and consulted with him on the business of the house, and constantly kept the house in *St. Bartholomews* advised of the business transactions in this country, and that *Krafts* applied to *T. Myer,* one of his agents in *New-York,* saying he wanted an agent in *Philadelphia,* and received letters to *Bohlen & Co.* upon that subject. It does not appear that he had any compting house.

It is an established principle, not only in the *prize* courts, but in the common law courts, that shipments made by merchants actually *domiciled* in the enemy's country, at the breaking out of a war, partake of the nature of the enemy's trade, and, as such, are subject to belligerent capture. The only question then is, whether *Krafts* was temporarily here, or whether he was here *animo manendi.* He having remained in the *U. S.* for such a length of time, the presumption of law is, that it was his intention to reside here permanently; and he is bound to explain the circumstances of his residence, to repel that presumption. This is the doctrine of the *British* admiralty court; (1 *Rob.* 102.) and it is founded in good sense, and the plainest principles of policy. The fact of a person's residing in a country, for a considerable period, leads to the conclusion that he has adopted it as the place of his residence. If the real fact be otherwise, he alone can show it. *Krafts* came to this country for his health ; but he has not shown that the state of his health required his continuance here. We find him, on one occasion, actually purchasing a cargo to be sent to *St. Bartholomews,* constituting a commercial agent, and superintending the concerns of the house, by advising with, and consulting the agents of the house, in relation to their business with the firm. Indeed, there is no proof, that *Krafts* ever talked of returning to *St. Bartholomews,* or that he ever explained himself to any one, that he was here for mere temporary purposes.

In the case of the *Jonge Klassima,* (5 *Rob.* 297.) the

ALBANY,
January, 1819.

ELBERS
v.
UNITED INS.
COMPANY.

claimant took the ground, that he was not to be deemed a resident in the hostile country, because he had no fixed compting house there. Sir *Wm. Scott* declared that circumstance not to be decisive. He asks, how much of the great mercantile concerns of the kingdom are carried on in coffee-houses? He says, it is a vain idea, that a compting house, or fixed establishment, is necessary to make a man a merchant of any place; if he is there himself, and acts as a merchant, it is sufficient.

In *Livingston and Gilchrist* v. *Maryland Insurance Company*, (7 *Cranch*, 542.) Mr. Justice *Story* says, " it is perfectly immaterial what is the trade in which the party is engaged, or whether he be engaged in any. If he be settled *bona fide* in a country, with the intention of indefinite residence, he is, as to all foreign countries, to be deemed a subject of that country." What constitutes a settlement in the country, is to be collected from all the circumstances of the case.

It seems to me not to admit of a doubt, that, by the well understood law of nations, the facts disclosed in this case, and the absence of all proof that *Krafts* was here, temporarily, or that he intended to return at any future time to *St. Bartholomews*, are decisive, that he had an indefinite intention to remain here; and, especially, as he was actually engaged in superintending the business of his house in their concerns in this country. The warranty is, therefore, broken, and falsified; the property insured would have been liable to belligerent capture and condemnation.

It becomes unnecessary to examine and decide the first point. With regard to the return of the premium, as the policy never attached, and as there is no ground to presume any fraud intended on the underwriters, the plaintiffs are entitled to it; the court, however, have not the requisite facts to enable them to pronounce how much is to be recovered. This, however, the parties can adjust between themselves.

Judgment for the plaintiff, for a return of the premium only.