Roberts on, Ch. J.
No obligation was imposed upon the plaintiff by the terms of the policy in question. ■ It bound the *170 defendants, only, to pay to his representatives a certain sum after his death, upon the performance by him of certain conditions, which were entirely at his option. The only means they had to secure the performance of such conditions was his own sense of self interest in not losing the advantages of their contract. As such conditions consisted mainly of periodical payments of certain sums of money, he was required to relinquish all right to reclaim any money previously paid by him, in cáse at any time he should neglect to pay those payable subsequently.
The rights of the plaintiff under the policy, and' by virtue of his membership of the corporation of the defendants, with the exception of his right to a share of the profits of the latter, and that of his representatives to the payment of the sum insured in case of his death, are so nearly identical, that they must be governed by the same principles. Ko case is made for claiming such share by alleging profits, the equitable allotment of a share of them to the plaintiff by the trustees of the company under the 13th section of the Charter, or a demand for them and non-payment. Of course, while the plaintiff is alive, any con tingent right of his representatives cannot be determined in advance.
I do not see very clearly what, or upon what, this court can adjudicate under these circumstances : I mean make an adjudication; not merely promulgate an opinion. The objection, perhaps, does not rank very precisely as one of those to jurisdiction over the subject of action, but it is rather one to the sufficiency of the cause of action stated. ¡No account can be decreed of profits made by the defendants, for the reasons already stated. The court cannot make a declaration or proclamation of its opinion to the world now, to be of any avail to the plaintiff’s representatiyes in recovering the amount insured hereafter; no transfer or vesting or divesting of rights would ensue for such a declaration, and nothing could now be decreed to be done as a consequence of such a declaration (Rooke v. Ld. Kensington, 2 Kay & J. R., 753; Grove v. Bastard, 2 Ph. Ch. Ca., 619; Jenner v. Jenner, Law Rep., 1 Eq., Pt. III., 361; Baylies v. Payson, 5 Allen, 488).
Such a judicial declaration appears to be only known to the *171 system of jurisprudence peculiar to Scotland (Bell’s Principles, &c., % 2252).
If the present complaint were directed to the restoration of any rights of membership in the corporation of the defendants, of which the plaintiff is deprived, this court could give no relief even as a court of equity; since the proper remedy is by mandamus to restore him to such rights, of which the supreme court alone has jurisdiction. So that the only jurisdiction the court could exercise would be to order a repayment, or in other words enable the plaintiff to rescind the contract, and recover hack part payments made by him, upon the ground that being part payment of an entire consideration, the defendants have either refused to perform their part of such contract, or thrown such obstacles in the way of the plaintiff’s performance of those conditions, which would enable him to claim the advantage of it, as to entitle him to be restored to the condition in which he was before it was made.
Even assuming, however, that the policy was an entire contract to insure for a life time, defeasible on non-payment of the fixed annuity, and that therefore such non-payment was a condition subsequent, and entitled to greater favor than a condition precedent, and that the present is a case for relaxing the rigors of the law in regard to performing such condition, the policy and its acceptance constituted something more than a contract. They conferred a membership of the corporation of the defendants, and gave the plaintiff a right to a share of the profits of the defendants, including such very payments.
The defendants were a partnership, whose business it was to receive compensation for entering into contingent obligations, which either formed the capital by means of which such obligations were to he discharged, or profits to the partners, in case they exceeded the amount necessary to discharge such obligations. The plain tiff, by becoming a member, was adopted as a partner in an existing partnership, agreeing to contribute to its capital the sums necessary to entitle him to a continuance of the contract which made him a member, which at the same time formed the consideration for such continuance, he receiving back as a member of such partnership while he so continued to contribute, a share of the very sums so contributed by him as profits. But he also agreed that a failure to *172 continue such contributions should deprive him of his membership, and all right to reclaim, as an individual with whom the partnership has made an unfulfilled contract, the sums paid as a consideration therefor. It is manifest that such a relation stands on an entirely different footing, as to the relaxation of the strict performance of conditions, from that of a mere obligor or obligee. The whole business for which the partnership was formed must end, if every one availed himself of obstacles to a performance on his part, to insist on the continuance of the contract. As it was entirely a matter of option with the insured to continue the contract of the company, the latter could not know why he had failed to perform the condition, by whose ¡performance they were to be notified of such election, and would be at á loss, in entering into new and similar obligations, to know on what to rely for the means of discharging them. This would be so entirely subsérsive of the purposes, mode of operation, and vitality of such a partnership, that such a relaxation of the rule would defeat the whole value of the contract and could not be supposed to have entered into the contemplation of the parties to it. The waiver of all right to claim such relaxation in any event, is by implication as much a part of such contract, as if it had been expressly stipulated in it (Priest v. Citizens’ Ins. Co., 3 Allen, 602; Buffum v. Fayette Ins. Co., 3 Allen, 360; Abbott v. Shawmut Ins. Co., 3 Allen, 213; Mulrey v. Shawmut Ins. Co., 4 Allen, 116; Brewer v. Chelsea Ins. Co., 14 Gray, 203; Evans v. Trimountain Ins. Co., 9 Allen, 329; Treadway v. Hamilton Ins. Co., 29 Conn., 68; Baxter v. Chelsea Ins. Co., 1 Allen, 294; Nightingale v. State Mutual Ins. Co., 5 Rhode Island, 38; 11 Cushing, 265; 12 Cushing, 469; 8 Gray, 28; 7 Cushing, 38).
But assuming this policy to be a mere contract between strangers to each other, and that this court could make a decree or judgment available and binding on the parties, and that unexpected obstacles, difficult to overcome, were an excuse for the want of strict performance of the condition subsequent contained in such policy, the question still remains whether the existing state of war between the government of this country and the insurgents, Confederate States, as they termed themselves, was a justifiable excuse for the non-payment of the premiums in question. Such an excuse has .two aspects ; first, *173 the physical impossibility of paying such sums, by reason of the difficulty of communication between the two parts of the country; and secondly, the prohibition of any dealings, by the inhabitants of the loyal States with the rebels or those inhabiting the country over which their dominion extended. I do not think the complaint undertakes to allege that the payment of such sums was physically impossible. Its allegations are merely that “ communication was suspended,” a very indefinite phrase, and that all payments of premiumns were impossible.” It does not state how or why they were impossible, whether the plaintiff ever possessed the means to pay, or desired to pay, or whether he made any effort. Possibility too often depends upon the will, the means, and the effort to accomplish an end, for the court judicially to know that there were insurmountable obstacles to a payment, without which it is not to be considered legally impossible (Beebe v. Johnson, 19 Wend., 500).
The history of the war shows, that however difficult and circuitous the mode was, such payments were feasible. I apprehend the plaintiff is not at liberty to substitute his own conclusion as to an impossibility, for a statement of the facts which he considered as producing it, that would enable the court to judge of the impossibility. A mere state of war does not necessarily produce it physically, and can only do so when such is its legal effect.
It is, perhaps, not entirely free from difficulties, how far the performance of conditions subsequent, by an obligee, to prevent a contract from being forfeited or rescinded, during a state of war, between the government of such obligee and that of the obligor in the country of the latter, is lawful. Of course no action can be maintained during a state of war by an alien enemy, nor while it subsists can any valid commercial contracts be made between the subjects of hostile powers (Griswold v. Waddington, 16 Johns., 438; Monongahela Ins. Co. v. Chester, 43 Penn., 491).
But contracts made before, can be enforced after such war, which only suspends the right of action, has ended. It has been held, that it was not unlawful for a citizen of the United States within its territory to perform, during a war with a foreign power,, an act in pursuance of a contract made before *174 such war, for the benefit of a subject of such foreign government (Buchanan v. Curry, 19 Johns., 137). How far this would extend to the acts of an alien enemy or his agent within the United States, to prevent a contract for his benefit with citizens of the Hnited States from lapsing, is perhaps open to discussion. Or although such alien enemy might not be allowed to perform such acts during such war, perhaps a neutral merely domiciled in the country of the enemy might; although his goods equally with those of an alien enemy are liable to capture and condemnation by the adverse belligerent (Elbers v. United Ins. Co., 16 Johns., 128).
But whatever may be the settled law on the subject, it does not aid the present plaintiff, who must be held, if he were allowed to tender the amount during the war, and was not prevented by invincible necessity from doing so, not to have a sufficient excuse for not doing so ; or else if such necessity was created by the illegality of dealings between subjects of belligerent governments during the war between them, he is not entitled to avail himself of a common calamity, which operated equally on both parties. He could not, in the latter case, be placed in a better light than if the legislature of the State had rendered the payment and reception of such premiums illegal, and subsequently repealed such enactment. In such cases both parties are deprived of a right in order to meet a public necessity, and although such vis mayor may excuse the performance of a covenant, it cannot the non-performance of a condition which is to keep alive a contract. It is the State that, in such cases, confiscates for and sacrifices to the public interest, not the other contracting party, who forfeits what would have been the benefits of the contract, if continued. It has been deemed necessary even to provide, by express statute, that the period of the continuance of a war between the United States and a foreign power, should be no part of the time of the statute of limitations, where the plaintiff had been a citizen of the country so at war with the United States (5 Rev. Stat., 295, § 32; Code of Procedure, § 103).
Eor the several reasons, therefore, that no judgment can he given by the court to affect the rights of the parties; that the partnership of the plaintiff with the defendants was terminated by his non-contribution of capital or profits, contrary to the *175 terms of the partnership agreement, and there is no equity which entitles him to be restored ; that he has not stated obstacles to the performance of the conditions required of him, so as to enable the court to pass upon their sufficiency, and that a mere state of war between the existing authorities of the country in which he resided and the United States, formed no excuse for not complying with such condition;__
I think judgment should be rendered for the defendants, with the usual leave to plaintiff to amend.
Ordered accordingly.