UNITED STATES v. SHEPHARD. See Case No. 16,273.

## Case No. 16,274.

### UNITED STATES v. SHEPHERD.

[1 Hughes, 520.] [1]

Circuit Court, E. D. Virginia. April 13, 1875.

CRIMES UNDER NATIONAL BANK LAWS—FELONIES—MISDEMEANORS—TRIAL IN ABSENCE OF ACCUSED.

1. Under the Revision of 1874, that clause of section 59, c. 106, of the act of congress of 3d June, 1864 [13 Stat. 117], relating to the national banks, which makes the offence it creates a felony, is repealed, and an indictment charging such an offence need not charge that it was feloniously committed.

2. There are no crimes against the United States which are felonies by virtue of the common law, except such as may be committed on the high seas, or in the places in the states which are under the exclusive jurisdiction of the United States.

[Cited in U. S. v. Coppersmith, 4 Fed. 205.]

3. Except offences committed on the high seas or in such places, there are no felonies against the United States, cognizable by courts of the United States, except those which are expressly made such by act of congress.

[Cited in U. S. v. Coppersmith, 4 Fed. 205.]

4. Trials for misdemeanors may be had after service of summons upon the accused, without the actual presence of the accused in court, especially if he is represented by counsel, certainly in the state of Virginia.

[Cited in U. S. v. Coppersmith, 4 Fed. 207.]

5. The verdict of guilty upon an indictment for misdemeanor may be rendered by a jury in the absence of the accused, if his counsel be present; and when so rendered, judgment will not be arrested.

The indictment [G. A. Shepherd] was for attempting to pass a falsely altered note of the national currency, knowing it to be falsely altered, in violation of the 5145th section of the Revised Statutes, which declares, as to this offence, that "every person who attempts to pass any falsely altered circulating note purporting to have been issued by any banking association authorized under the laws of the United States, knowing the same to be falsely altered, shall be imprisoned at hard labor not less than five years nor more than fifteen years, and fined not more than one thousand dollars." The act of congress passed in 1864, from which this section is taken, contained a clause declaring that such a person shall be deemed and adjudged guilty of felony and shall be imprisoned, etc., but this clause is omitted in the revision of 1874. The note was falsely raised from a one dollar to a ten dollar note. The case was tried on the 8th of April, and given to the jury, and on the 9th, the jury found a verdict of guilty, but brought in their verdict at a late hour of the day, after the prisoner had been taken to jail, and he was present only by counsel. Before finding the verdict, the jury

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

had been in deliberation for thirty hours, and a few hours before rendering their verdict, had come into court and asked instructions on parts of the case which are adverted to in the opinion of the judge.

Immediately on the rendering of the verdict the prisoner's counsel moved in arrest of judgment, and for a new trial. The grounds of these motions were: 1st. That this was by law a felony and the indictment did not charge that the prisoner "feloniously" attempted to pass the falsely altered note, and should be quashed. 2d. That whether a felony, or a misdemeanor, punishable by an imprisonment, which the court might fix for fifteen years, the prisoner ought to have been allowed the privilege of being present when the verdict was rendered; and that, having been held in jail at the time by the United States, the verdict ought to be set aside. 3d. That the verdict ought also to be set aside because it was contrary to the law and the evidence.

HUGHES, District Judge. The court overrules the first objection. The repealing chapters at the end of the Revised Statutes of the United States of 1874, repeal all former acts of congress, "any portion of which is embraced in the revision." The revision therefore repeals that part of section 59 of chapter 106 of the act of 1864, relating to the national banks, which makes the offence named a "felony." Not being a felony, of course the offence should not have been charged as having been "feloniously" committed. Except those committed on the high seas and within the forts, arsenals, and other places exclusively within the jurisdiction of the United States, and except high treason, there are no common law offences against the United States; and all crimes are statutory. There are therefore no felonies against the United States except those expressly declared to be such by act of congress. It has not been the policy of congress to multiply felonies; comparatively few offences are declared to be felonies. As a general rule, offences against the United States are misdemeanors punishable by imprisonment, by fine and imprisonment, by fine or imprisonment, or by fine alone. If punishable by fine alone, the offenders may be proceeded against by indictment for the fine or by action of debt for the penalty. Therefore a very large number of offences against the United States may be tried in the absence of the accused, if his counsel be present.

The court also overrules the second objection. The cases cited by prisoner's counsel only go to the extent of ruling that verdicts in trials for felony must be rendered in the presence of the prisoner. They do not invalidate verdicts rendered in the absence of the accused in cases of misdemeanor. This exception in respect to misdemeanors has not been made merely because in misdemeanor trials the accused is usually on bail, and if

absent, is voluntarily so. The cases make no distinction in such trials between those in which the accused is on bail, and those in which he is not. The Code of Virginia (page 1243, c. 201, § 25) allows the trial of misdemeanor to proceed, provided a summons has been served, whether a capias has been returned, executed, or not executed, and whether the accused be present in person or not. In such matters the practice in the courts of the state, furnishes the rule of practice in this court. The old formula of the common law practice, requiring the clerk when the jury appeared with their verdict, to say: "Gentlemen of the jury, look upon the prisoner and hearken unto your verdict," originated at a time when the penal code of England was a very bloody one, and denounced capital punishment for the most trivial offences; when the pleadings even in criminal prosecutions were written in a foreign language, and when prisoners were not allowed the advice and assistance of counsel. The barbarities of criminal justice were then so gross, that great and humane judges availed themselves of the most technical irregularities in the pleadings and proceedings as an excuse for discharging prisoners standing dumb and helpless before them, and threatened with the most awful punishment for the most venial offences. But the penal code has in modern times been stripped of its barbarities; penalties are apportioned in degree to the crimes which they are intended to prevent; prisoners enjoy the assistance of counsel, and are provided with opportunity and means of full and complete defence. All proceedings are conducted in the venacular of the country and of the accused, unless he be a foreigner, in which case they are humanely interpreted to him. The old technicalities of the criminal practice have been gradually discarded, as the necessity for them decreased, and finally ceased; and now, the rules of the criminal practice are as little arbitrary and technical, and as reasonable and just as they are in civil proceedings. The prisoner at bar was ably defended at every stage of the trial, and though he was not personally present when the verdict was rendered, both of his counsel were. They did not ask that he should be brought in; they moved instanter for an arrest of judgment and a new trial, and did all that the prisoner could have done or demanded if he had been present in person. The second objection is therefore overruled.

3d. The prisoner's counsel also make several objections to the verdict, as contrary to the law and evidence of the case: (1st.) One is, that it was not proved beyond doubt that the accused knew that the note was falsely altered when he attempted to pass it. (2d.) Another is, that a confession made to the arresting officers at a considerable interval of time after the arrest, was given in evidence, so as to have an effect upon the views of the jury, in spite of the instructions of the court,

that they should not be regarded. (3d.) Still another objection is, that the extraordinary length of time during which the jury were in deliberation, indicated that they were doubtful of the guilt of the prisoner.

(1) It is true that there was not much positive proof that the prisoner knew that the note was falsely altered. This knowledge on his part was inferred in part from circumstances; but these were such as could leave no doubt on the mind of the jury of the guilty knowledge. The alteration of the note, though skilfully enough done to escape notice in the hurry of business, was so perceptible when once suspected, that the prisoner could not but have known it when he attempted to pass it. The appearance of the note was of itself conclusive of the fact of guilty knowledge, in any attempt to pass it in broad daylight, after it had been examined by the holder.

(2) The court positively instructed the jury that confessions elicited by an officer from a prisoner while in duress and alarm, and without warning as to the use that would be made of them, were not evidence. I cannot infer in the present case, that the jury disregarded this instruction. A similar admission to that afterwards made to the officer was made by the prisoner when arrested in the presence of the person to whom he offered the note, and was evidence as a part of the res gestæ.

(3) My own understanding is that the jury were held a long time in doubt by the misapprehension that the attempt to pass the note was not an offence, and that the prisoner could only be convicted in the event that he actually passed it. After they were instructed by the court that the law made the attempt to pass, an offence, as well as the passing, and that the indictment charged the attempt, the jury were but a short time in deliberation.

I do not, therefore, think the case is one in which it would be proper to set aside the verdict and to award a new trial. It is, indeed, emphatically a case in which neither jury nor court can give relief. It is the case of a young man of good character, reputable connections, industriously engaged in making an honest livelihood, who is cheated on a railroad train, probably in the night-time, by some swindler, into receiving a spurious bank note, and who on discovering his misfortune, endeavors to get rid of the note the next morning in market by victimizing somebody else, who fails in the attempt, and is arrested and brought to trial for a first offence against the law, committed in an evil moment, without due reflection upon the nature and consequences of his act. It is a strong case for an appeal to executive clemency, but one in which neither the jury nor the court have a right or the power to exercise the high function of pardon.

The most that the court can do is, to suspend the sentence, so as to allow the friends of this young man to make appeal to the

president for a pardon, which I hope will be granted him. Sentence will be suspended until the 20th instant.