## UNITED STATES *v.* COPPERSMITH.

*(Circuit Court, W. D. Tennessee.*   ———, 1880.)

1. FELONY — COUNTERFEITING — PEREMPTORY CHALLENGES — REV. ST. §
   819.—Section 819 of the Revised Statutes provides that, "when the
   offence charged is treason or a capital offence, the defendant shall
   be entitled to twenty and the United States to five peremptory chal-
   lenges. On the trial of any other felony the defendant shall be en-
   titled to ten and the United States to three peremptory challenges;
   and in all other cases, civil and criminal, each party shall be entitled
   to three peremptory challenges." *Held,* that the offence of uttering
   and passing counterfeit coin was not a felony within the terms of this
   section.

Indictment for counterfeiting.

*W. W. Murray,* Dist. Att'y, and *J. B. Clough,* Ass't Dist.
Att'y, for the United States.

*George Gantt,* for defendant.

HAMMOND, D. J.   The defendant, being on trial for counter-
feiting the coin of the United States, has peremptorily chal-
lenged three of the jurors tendered to him, and claims the
right to challenge another, and any number to the extent of
10, under section 819 of the Revised Statutes.   He insists
that the offence of making counterfeit coin is a *felony* at com-
mon law, and therefore a felony in the purview of that sec-
tion; he also insists that being punishable by imprisonment
at hard labor, which necessarily implies confinement in a
penitentiary, it is a felony according to the ordinary accepta-
tion of the term in American law; that congress used the
term in that sense in this statute, and did not intend to indi-
cate capital offences already provided for by the same section
of the Revised Statutes.

Section 819, above referred to, is as follows: "When the
offence charged is treason or a capital offence, the defendant
shall be entitled to twenty and the United States to five per-
emptory challenges.   On the trial of *any other felony,* the
defendant shall be entitled to ten and the United States to
three peremptory challenges, and in all other cases, civil and

criminal, each party shall be entitled to three peremptory challenges," etc.

It is apparent that it was here intended to designate by the term "any other felony," other offences than *capital* offences, for they are otherwise specially provided for by this section.

Prior to legislation by congress this matter of peremptory challenges in the federal courts was in some confusion until the supreme court declared that they might, by rule, adopt the state practice. *U. S.* v. *Shackleford,* 18 How. 588; *U. S.* v. *Douglas,* 2 Blatchf. 207; *U. S.* v. *Reed,* Id. 435, 447, and note; *U. S.* v. *Cottingham,* Id. 470; *U. S.* v. *Tallman,* 10 Blatchf. 21; *U. S.* v. *Devlin,* 6 Blatchf. 71.

When we could resort to the state practice it was generally found that legislation had accurately regulated the right of challenge by distinctly classifying offences with such statutory definitions as left no room for doubt. But since congress has legislated we can no longer look to the state laws for guidance, nor to the common law, but only to the acts of congress themselves, which, unfortunately, have only increased the confusion by the use of an indefinite term. I am not advised of any reported case construing this section, nor of the practice in regard to it, except that it is said at the bar that heretofore in this district 10 challenges have not been allowed in any case where the offence charged was not, by the statute creating it, declared to be a felony. The first act of congress, passed March 3, 1865, (13 St. 500,) after providing for treason and capital offences, as is done by this section 819, provided that, "on the trial of any other offence *in which the right of peremptory challenge now exists,* the defendant shall be entitled to ten and the United States to two peremptory challenges." The criticism of Judge Conkling, in the fifth edition of his Treatise, page 632, on this act, demonstrates how indefinite were the terms used, and he concludes that the section was nugatory as to all crimes except treason and capital offences: because the right of peremptory challenge, he says, only exists in cases of *felony,* and now nothing is felony except *capital offences.* In this criticism the learned district judge of Oregon seems to concur, for he also declares the sec-

tion nugatory. *U. S.* v. *Randall,* 1 Deady, 524, 548. Yet, strange to say, the act of June 8, 1872, (17 St. 282,) substitutes this word *felony* for the phrase in the act of 1865 which was thus condemned, because it limited the right of peremptory challenges to cases of *felony,* and thereby left it impossible to determine under the act of 1865 to what cases it should apply. Perhaps a proper construction of the act of March 3, 1865, taken in connection with the law as it then stood under the decision in the case of *United States* v. *Shackleford, supra,* and the act of 1840, would have been to look to the *state practice* to determine in what cases the right of peremptory challenge "now exists," and to allow 10 challenges in all such cases; for the state practice then furnished not only the rule as to number, but the rule as to the kind of offence in which the right of peremptory challenge existed, as we have already seen. There would have been some certainty in this, but now there is no other course but to determine by the common law what congress meant in this section of the Revised Statutes by the words *"any other felony."* If congress uses a common-law term in defining a crime, or in any statute, we must look to the common law for a definition of the term used. 2 Abb. Pr. 171; Conk. Treatise, 178, (5th Ed.;) *U. S.* v. *Palmer,* 3 Wheat. 610; *U. S.* v. *Wilson,* Baldw. 78, 93; *U. S.* v. *Barney,* 5 Blatchf. 294, 296; *U. S.* v. *Magill,* 1 Wash. 463. The Massachusetts Code commissioners, many years ago, in enumerating *felonies* within the provisions of their Code, in a note, add that the meaning "of the word *'felony'* (as by them defined) is limited to the use of the word in this Code, and is not to be confounded with the common-law signification of the same term, *whatever that meaning may be, for it is a matter of no little difficulty to settle it."* Report, title "Explanation of Terms Cited;" 1 Hale's P. C. (A. D. 1847) 575, note.

The supreme court of Alabama said, in *Harrison* v. *State,* 55 Ala. 239, 241, that it is not easy to determine in all cases what are *felonies* and *crimen falsi.* "To predicate of an act," says the supreme court of Ohio, "that it is *felonious,* is simply to assert a legal conclusion as to the quality of the act; and unless the act charged, *of itself,* imports a felony, it is not

made so by the application of this epithet. Indeed, the term *felony* has no distinct and well-defined meaning applicable to our system of criminal jurisprudence. In England it has a well-known and extensive signification, and comprises every species of crime which at common law worked a forfeiture of goods and lands. But under our Criminal Code the word '*felonious,*' although occasionally used, expresses a signification no less vague and indefinite than the word '*criminal.*'" *Matthews* v. *State*, 4 Ohio St. 539, 542. In the constitution of Tennessee the words "*criminal charge*" are held to be synonymous with "*crimes,*" which is said to mean, technically, "felonious" offences. *McGinnis* v. *State*, 9 Humph. 43.

The term "felony" appears to have been long used to signify the degree or class of crime committed, rather than the penal consequences of the forfeiture occasioned by the crime according to its original signification. 1 Archb. Cr. Pl. 1, note; 1 Russ. on Crimes, 43.

Capital punishment by no means enters into the true definition of felony. Strictly speaking, the term comprised every species of crime which occasioned at common law the total forfeiture of either lands or goods, or both. That was the only test. Felonies by common law are such as either concern the taking away of life, or concern the taking away of goods, or concern the habitation, or concern the obstruction of the execution of justice in criminal and capital causes, as escapes, rescues, etc. 1 Hale's P. C. 411. These crimes were of such enormity that the *common law* punished them by forfeiture: (1) the offender's wife lost her dower; (2) his children became base and ignoble and his blood corrupted; (3) he forfeited his goods and chattels, lands and tenements. The superadded punishment was either capital or otherwise, according to the degree of guilt; that is, the turpitude of the offence. There were felonies not punishable with death, and on the other hand there were offences not felonies which were so punishable. However, the idea of felony was so generally connected with capital punishment, that, erroneously, it came to be understood that all crimes punishable

with death were felonies; and so, if a statute created a new offence and declared it a felony, but prescribed no punishment, by implication of law it was punishable with death. This has been changed by statute, and now, where a felony is created and no punishment prescribed, it is transportation for seven years, or imprisonment, with or without hard labor, not exceeding two years; and for a second felony, transportation for life. 7 and 8 Geo. IV. The punishment for a misdemeanor at common law was fine or imprisonment, or both, unlimited, but in the most aggravated cases seldom exceeding two years. Tomlin's Dict. title "Felony;" 4 Black. Com. 94; 3 Inst. 43; 4 Bacon's Abridg. title "Felony" and title "Forfeiture;" Viner's Abridg. title "Forfeiture;" 1 Hale's P. C. 411, 574; 1 Archb. Cr. Pr. 1, and note, and p. 185; 1 Russ. on Crimes, 42; 1. Bish. Cr. Law, §§ 580–590; *U. S.* v. *Williams*, 1 Cranch's C. C. 178; *Adams* v. *Barrett*, 5 Ga. 404, 412; *State* v. *Dewer*, 65 N. C. 572; *U. S.* v. *Smith*, 5 Wheat. 153, 159; *U. S.* v. *Staats*, 8 How. 41.

Tested by the common law, then, this term has no very exact and determinate meaning, and can apply to no cases in this country except treason, where limited forfeiture of estate is allowed. But technically that is a crime of a *higher* grade than felony, although it imports also felony. If it be conceded that capital punishment imports a felony, there can be none, *at common law*, except capital crimes. But that test is untechnical and founded in error. It does not always apply, and it is as arbitrary to say that a crime punished capitally is a felony, as it is to say that one punished by imprisonment in the penitentiary is a felony. Our ancestors brought with them the common-law gradations of crime, as they stood in their day, and although they organized a government which is wholly destitute of a criminal common law, its influence has always prevailed to produce incongruities arising out of an attempt, even when creating new offences, unknown to any law except our own peculiar system, to keep up its gradations of crime. The supreme court, in the case last cited, points out the distinction between the use of the word "felony" as descriptive of an offence, and as descriptive

of the punishment; pronounces it the merest technicality, and holds that where a statute creates an offence and declares it a felony it is not necessary to plead a felonious intent. Bouv. Dict. "Feloniously." The court also speaks of "the *moral degradation* attaching to the punishment actually inflicted," and intimates that it is about all that is left to us of the common-law idea of felony. There is just as much of moral degredation in an offence called by the statute-makers a misdemeanor, if punished degradingly, as if with the same character of punishment they call it a *felony.*

In American law, forfeiture as a consequence of crime being generally abolished, the word "felony" has lost its original and characteristic meaning, and it is rather used to denote any high crime punishable by death or imprisonment. Burrill's Dict. title "Felony." The term is so interwoven with our criminal law that it should have a definition applicable to its present use; and this notion of moral degradation by confinement in the penitentiary has grown into a general understanding that it constitutes any offence a felony, just as, at common law, the idea of capital punishment became inseparably connected with that of felony. There is, therefore, much force in the suggestion of counsel that since we cannot define this word, as used in this statute, by the common law, it must be understood that congress used it in this modern sense. Because, where the words of a statute construed technically would be inoperative, but construed according to their common signification would have a reasonable operation, the courts do sometimes adopt the latter construction. Yet it will be found that this modern idea of felony has come into general use by force of state legislation on the subject, so far as it is legally established. From a very early day, and as a necessity, the state legislatures have passed laws defining and enumerating felonies as those crimes punishable by confinement in the penitentiary; and this has come to be the law in nearly every state. In Tennessee the law of 1829 elaborately enumerates felonies, and punishes them with hard labor in the jail or penitentiary, and the act of 1873, chapter 57, makes all crimes, punishable by confine-

ment in the penitentiary, felonies, and so defines the term. C. & N. 316; Acts 1873, p. 87. We have no such legislation by congress. Section 5391 of the Revised Statutes is limited to offences committed in places ceded to the United States, and adopts the state law as to such offences if not otherwise provided for; and of course, in such cases, if the offence is a felony by state law, it becomes a felony by this section.

There is no uniformity in the legislation of congress as to the punishment of criminal offences, and we often find statutory misdemeanors punished more severely than statutory felonies; and while some of the statutes prescribe hard labor as a part of the punishment, when necessarily the confinement must be in some prison where it can be so enforced, on the other hand the simple imprisonment prescribed may become confinément with hard labor by selecting a prison where it is a part of the discipline; so that we often find prisoners convicted of the same offence, and sentenced to the same punishment, undergoing in fact different punishments. *Ex parte Karstendick*, 93 U. S. 396. In this case it is held that it is not the intention of our statutes to limit confinement in the penitentiary to those offences where hard labor is imposed. Rev. St. § 5539. We find it, therefore, impracticable to apply any such test as that prescribed by the state legislation above mentioned, as the legislation of congress now stands, to the determination of the meaning of the word "felony" as used in section 819 now under consideration.

But, aside from this, nothing is better settled than that we cannot look to the state laws, in the criminal jurisprudence of the United states, for the characteristic elements which go to make up an offence, and enter into it as a part of its legal *status*; nor to the common law; nor even to the character of the punishment. The federal courts take no cognizance of state statutes in criminal proceedings, and deduce no criminal jurisdiction from the common law, which has no force, directly or indirectly, to make an act an offence not made so by congress; though in all matters respecting the accusation and trial of offenders, not otherwise provided for, we are

referred to the laws and usages of the state when the judicial system was organized. 1 Abb. Pr. 197; 2 Abb. Pr. 171; *U. S.* v. *Reid,* 12 How. 361; *U. S.* v. *Lancaster,* 2 McLean, 431; *U. S.* v. *Peterson,* 1 Wood. & M. 306, 309; *U. S.* v. *Shepherd,* 1 Hughes, 520, 522; *U. S.* v. *Taylor,* Id. 514, 517; *U. S.* v. *Maxwell,* 3 Dill. 275, 276; *U. S.* v. *Shepard,* 1 Abb. 431; *U. S.* v. *Cross,* 1 McArth. 149; *U. S.* v. *Black,* 1 Sow. 211; *U. S.* v. *Ebert,* 1 Cent. L. J. 205; *U. S.* v. *Williams,* 1 Cliff. 5; *U. S.* v. *Barney,* 5 Blatchf. 294; *U. S.* v. *Watkins,* 3 Cr. C. C. 441, 451; *U. S.* v. *Hammond,* 2 Woods, 197; *U. S.* v. *Magill,* 1 Wash. C. C. 463.

In those cases where the state laws have been adopted as in section 5391 of the Revised Statutes, they stand as if the act of congress had defined the offences in the very words of the state law; and in those cases where congress has been content to denounce the offence by its common-law name, as in murder and rape, for example, (Rev. St. 5339, 5354,) they stand as if congress had re-enacted the common law *totidem verbis.* And in such cases, unquestionably, if the crime be a felony at common law or by state statute, it is **a** felony under the act of congress; and if not punished *capitally* would fall within the designation of "any other felony," as used in this section 819, by force, not of the common law or state statute, but of the federal statute. Murder is a felony at common law, but it may be doubted if rape is, it having been made so by statute. Merton, 2; 1 Hale's P. C. 226. If this latter offence were not punished capitally, and we were confined, as in some of the states, to the *ancient* common law, and not that existing at the time of the revolution, it would become a very difficult matter to determine how it was to be ruled under this section 819. This is mentioned to illustrate the almost inextricable perplexity which arises from the use of this word "felony" in the present state of our law, in acts of congress, without some statutory definition of it. It does not follow, however, because we can find no common-law definition of this term which will give it and this statute operation according to that law, and are forbidden to adopt the definition found in the modern use of it in state statutes, that this

clause of the section is nugatory. The authorities cited show that congress has the undoubted power to create felonies by legislation operating within the limitations of its jurisdiction over crimes, and that from time immemorial legislatures having general jurisdiction over criminal offences have added felonies to the common-law list. *U. S.* v. *Tynen,* 11 Wall. 88. Statutes create felonies either by declaring offences to be felonies in express terms, or impliedly, as in the ancient statutes, by enacting that the defendant should have judgment of life and member where the word "felony" is omitted, or where the statute says an act under particular circumstances shall be deemed to have been feloniously committed. 1 Arch. Cr. Pr. 1, and note; 1 Russ. on Crimes, 43; and authorities above cited. Now, where the common law operates, this declaration, express or implied, entailed the consequences of forfeiture, and if the statute fixed no punishment there was superadded by the ancient law the penalty of death, and now in England transportation, and in our American states confinement in the penitentiary. But it is manifest that the jurisprudence of the United States, as long as section 5326 of the Revised Statutes and other prohibitions of forfeiture of estate and corruption of blood as a punishment for crime continues to be the law, and as long as congress adopts no general legislation punishing felonies as such, either capitally or otherwise, the declaration that an offence shall be a felony in an act of congress is merely *brutum fulmen,* except so far as it inclines the legislative mind to affix a more severe penalty for the commission of the offence. Notwithstanding this, however, it has been, until recent years, the constant habit of congress to declare offences created by it either felonies or misdemeanors in express terms, or to leave them to be misdemeanors by making no declaration on the subject. There is no doubt that offences are felonies when so declared to be, and the accused is entitled in such cases, where not punished capitally, to 10 challenges under this section 819, and this is about the only substantive effect such a declaration has, unless it be that it further gives the accused the right to be proceeded against only by indictment under the

fifth amendment to the constitution; though it has been judicially declared that under our system a felony is not an *infamous* crime in the sense of that amendment. *U. S.* v. *Cross, supra,* and the other authorities above cited. It would seem, therefore, that it is rather to the advantage than the disadvantage of the offender to have congress declare his offence a *felony.* Be this as it may, the clause under consideration may operate, in other than capital cases, to give the defendant 10 challenges in the following classes of cases: *First,* where the defence is declared by statute, expressly or impliedly, to be a felony; *second,* where congress does not define an offence, but simply punishes it by its common-law name, and at common law it is a felony; *third,* where congress adopts a state law as to an offence, and under such law it is a felony.

It only remains to be determined whether the offence charged in this indictment comes within either of these categories. Making counterfeit coin was by the ancient common law treason, and subsequently a felony, while uttering or passing it was only a misdemeanor. *Fox* v. *Ohio,* 5 How. 410, 433; Tomlin's Dict. title "Coin;" 1 Hale's P. C. 210, 224; *U. S.* v. *M'Carthy,* 4 Cranch's C. C. 304; *U. S.* v. *Shepherd,* 1 Hughes, 521. The act of 1790 (1 St. 115) declares counterfeiting the public securities a felony, and punished it with death. The act of 1825 reduced the punishment to hard labor not exceeding 10 years. 4 St. 119. The act of 1806, the first to protect the coin, declared counterfeiting a felony punishable by imprisonment at hard labor. 2 St. 404. The act of 1825 declared counterfeiting the coin a felony punishable with imprisonment at hard labor not exceeding 10 years. 4 St. 121. The act of 1873 declared counterfeiting treasury notes a felony, as did the acts of 1847 and 1861. 9 St. 120; 12 St. 123; 17 St. 434. Counterfeiting postage stamps was declared felony by the acts of 1851 and 1853. 9 St. 589; 10 St. 256. Counterfeiting three-cent pieces was by the act of 1865 made a misdemeanor. 13 St. 518.

The Revised Statutes drop this classification, as does the act of 1877, and these offences are no longer declared felo-

nies. Rev. St. 5414, 5457, 5464; 19 St. 223. And this demonstrates that the legislative will no longer declares this offence a felony, and we think the felony feature is impliedly repealed. It is argued very earnestly, however, that the effect of this is only to leave it a felony as at common law. We have already shown that under our system there is no common-law felony unless congress merely defines a crime which is a felony at common law by its common-law name. If the act said "counterfeiting" shall be punished as prescribed, it would be a felony; but it does not say so; it defines the offence for itself, and does not declare it a felony for the obvious reason that such a declaration would not change the character of the crime or the punishment, and would be wholly useless. Besides, it would be absurd to punish the misdemeanors of uttering and passing counterfeit coin with precisely the same punishment, all defined in the same section, and then say it was the intention of congress to give a defendant charged with making the counterfeit ten challenges, and another defendant who passed it only three, while both offences are defined and punished by the same section and with the same punishment. There is no substantial reason for such a distinction. One crime is just as heinous as the other in the sense of this statute, and are upon an equal footing.

It is ruled that the defendant can have but three challenges.