## Case No. 16,273.

UNITED STATES v. SHEPARD.

[1 Abb. (U. S.) 431; [1] 2 Chi. Leg. News, 317; 12 Int. Rev. Rec. 10.]

District Court, E. D. Michigan.    June Term, 1870.

ARREST OF OFFENDERS—EXAMINATION—REMOVAL TO OTHER DISTRICT—FEDERAL COURTS— CRIMINAL INFORMATIONS.

1. Where a motion to quash an indictment is founded upon the allegation that no evidence

---

[1] [Reported by John W. Brockenbrough, Esq.]

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

whatever of defendant's guilt was adduced in support of the application for a warrant for his arrest, the court may inquire into this allegation, and, if it is established, quash the indictment; though they cannot inquire into the sufficiency of such evidence, if any was produced.

2. A certified copy of an information filed for an offense against the laws of the United States, without copies of some oath or affirmation to facts showing probable cause to believe the defendant guilty, does not authorize issuing a warrant of arrest.

[Cited in U. S. .. Pope, Case No. 16,069.]

3. It is not lawful to arrest a person in one district, for an alleged offense against the laws of the United States, and remove him to another district for examination; nor can a district judge authorize such removal. The offender, upon being arrested, is entitled to be taken before the proper officer of the district in which the arrest is made, for examination; and if probable cause is not shown, or if (the case being bailable) he gives bail, he is entitled to be discharged. It is only after a commitment upon the results of such examination that an order can be made to remove him to the district in which the trial is to be had.

[Cited in Re Alexander. Case No. 162; U. S. v. Haskins, Id. 15,322; U. S. v. Jacobi, Id. 15,460; U. S. v. Brawner, 7 Fed. 88; U. S. v. Reilley, 20 Fed. 46; Erwin v. U. S., 37 Fed. 489; U. S. v. Wallace, 46 Fed. 571.]

[See In re Bailey, Case No. 730.]

4. Criminal proceedings in the courts of the United States are according to the course of the common law; except so far as has been otherwise provided by the constitution or acts of congress. They are not affected by the laws of the several states.

[Cited in U. S. v Coppersmith, 4 Fed. 205.]

5. Hence it is not necessary that the names of witnesses for the prosecution should be indorsed on the indictment or information preferred in one of those courts; although such indorsement may be required by statute of the state.

6. An offense against the laws of the United States, which is of a character not capital or infamous, may be prosecuted in the courts of the United States, by an information, according to the course of the common law.

[Cited in U. S. v. Ebert, Case No. 15,019; U. S. v. Maxwell, Id. 15,750. Distinguished in U. S. v. Ronzone, Id. 16,192. Cited in Ex parte Wilson, 114 U. S. 425, 5 Sup. Ct. 939; U. S. v. Baugh, 1 Fed. 787.]

7. The proper course of proceeding in issuing a criminal information explained.

Motion to quash an indictment. In September, 1869, the district-attorney filed an information in the district court for the Eastern district of Michigan, against G. Shepard. The offense with which the accused was charged was the knowingly and fraudulently bringing into the United States certain personal property in violation of section 4 of the act of July 18, 1866 (14 Stat. 179); [and the punishment is by fine not exceeding $500, or imprisonment not exceeding two years. This may be in the penitentiary.][2]

The defendant having been arrested upon this charge, and having given bail, now moved to quash the indictment.

[2] [From 12 Int. Rev. Rec. 10.]

A. B. Maynard, U. S. Dist. Atty.

Alfred Russell, for defendant.

WITHEY, District Judge. The facts exhibited as the grounds of the motion are, that the information upon which the government seeks to hold the defendant to answer and trial, was filed by the district-attorney without oath or proof of probable cause, and without application to or leave of court. Before the information was filed, complaint was made before a commissioner at Detroit, and a warrant for the arrest of the accused was issued to the marshal of the Eastern district of Michigan. But the accused being absent from the city no arrest was made upon the warrant. The information was then filed by the district-attorney, as above stated. As no arrest could be or was made upon the warrant issued by the commissioner, the arrest and holding to bail rests solely on the information. A certified copy of the information was taken to Chicago, when the district judge of the Northern district of Illinois, on proof of the identity of the accused, but upon no other evidence of probable cause than such copy, indorsed thereon his warrant for the arrest of defendant, and for his removal to this district for trial.

Defendant was arrested and brought to this city; here he was taken before the United States commissioner, waived examination, and gave bail for his appearance to answer the charge contained in the information.

The court will consider three questions involved by the motion to quash: (1) Was the arrest lawful, and, if not, can the defendant be held to answer? (2) Is the information legally sufficient, the names of the witnesses for the prosecution not being indorsed thereon? (3) Can a person be held to answer for an offense, not capital or infamous, on an information filed by the law officer representing the government?

The first question is answered by the fourth constitutional amendment. which declares that "no warrant of arrest shall be issued but upon probable cause, supported by oath or affirmation," &c. Had there been any showing for the arrest at Chicago, supported by oath or affirmation, this court could not inquire whether the showing was sufficient to justify the issuance of the warrant by the district judge of Illinois; but when it is alleged there was no showing supported by oath or affirmation, and the illegality of the warrant is made the basis for arresting all further proceedings in the cause, it is our duty to inquire whether the fact is as asserted.

We have already stated what is proved here,—namely, that the certified copy of the warrant was all that was shown to procure the order of arrest. The constitution declares that "no warrant of arrest shall issue but upon probable cause," &c.; the information is not supported by oath or affirmation; it follows, as a corollary, that the warrant was not authorized. There was no proof of proba-

ble cause, supported by oath or affirmation to justify it. Doubtless, the learned judge who issued the warrant, acted upon the presumption that the proceedings here had been such as to establish probable cause; treating the information as having been filed upon cause shown, and regarding the certified copy as affording the same evidence as a certified copy of an indictment would furnish, when the evidence of probable cause is presumed to have been given to the grand jury. It now turns out that the proceedings anterior to the issuance of the warrant, laid no foundation for the arrest, and all proceedings based upon such unlawful arrest must fail.

Under the question we have been considering, a point was made that the warrant to remove defendant from Chicago, in one district, to Detroit, in another district, was unauthorized under the facts exhibited. The only act of congress upon the subject of the arrest and removal of offenders against the laws of the United States, is that of September 24, 1789, § 33 (1 Stat. 91), in reference to removal of offenders in one district, to be tried in another. It is this: "If such commitment of the offender . . . shall be in a district other than that in which the offender is to be tried, it shall be the duty of the judge of that district where the delinquent is imprisoned seasonably to issue, and of the marshal of the same district to execute, a warrant for the removal of the offender . . . to the district in which the trial is had." By consulting the previous portions of this section, in connection with the clause I have read, it will appear that the warrant of removal is authorized only where the offender has been first arrested and committed for want of bail, in a bailable case. The statute does not seem to contemplate or warrant removing a person from one district to another in the summary way pursued in this case. He is first to be taken before the proper officer, who is to examine as to the crime alleged against the accused. If there be not probable cause of his guilt, he is entitled to be discharged; whereas, if there be found reasonable cause for holding the accused to answer, upon tendering sufficient bail, he is entitled to his discharge from arrest. Only on failure to give bail, in a bailable case, can he be committed.

Defendant was at liberty in the city of Chicago; was arrested and immediately removed to Detroit, without opportunity to confront the charge at the place of his arrest. We are at a loss to understand how the defendant could thus be dealt with under the statute. Suppose defendant had been a resident of Galveston, in Texas, or San Francisco, in California, instead of Chicago, and was thus arrested and summarily removed nearly across the continent, before having the opportunity of meeting the charge on which he was arrested. We will suppose, when examined here, before the proper officer upon the charge, it should turn out that the charge is not sustained. Does not this plainly illustrate the wrong and injury which may be done to a citizen under such forms of legal proceedings? We regard the removal as having been wholly without the authority of law.

In reference to the second question, we remark that state laws do not control in criminal proceedings in the United States courts, either in the mode or form of charging the offense, in the rules of evidence, or in the manner of conducting the trial. On the contrary, the proceedings throughout are according to the course of the common law, except so far as has been otherwise provided by the laws of congress or by constitutional provision. U. S. v. Reid, 12 How. [53 U. S.] 365. It was not required by the common law that the names of witnesses for the prosecution should be indorsed on the indictment or information, and there is no act of congress requiring it. In treason a list of the government witnesses is to be furnished to the accused. The Michigan statute does require the names to be indorsed on the indictment; but if the state statute governed our proceedings we should regard this provision as directory, and the omission as not affecting the validity of the indictment or information.

The other question to be considered presents an interesting inquiry. We have said the common law governs in criminal cases in the United States courts; hence the question whether the accused can be held to answer to a criminal information must be solved by determining, first, what is the common law on that subject; and second, what modifications have been effected through the laws of congress or the constitution. The English system of jurisprudence brought by our ancestors as the common law, and those statutes of parliament applicable to the situation of the colonies, which extended to them and were adopted by usage or acts of assembly, have been by the United States courts held to be the common law of this country. Patterson v. Winn, 5 Pet. [30 U. S.] 241; Bains v. The James and Catherine [Case No. 756].

At the time of the revolution and of the adoption of the constitution, it was the practice in the court of king's bench for the king's attorney-general to file informations in the name and behalf of the king, in a class of cases not above the grade of misdemeanors, without any previous showing to the court, but in the discretion of that officer. This discretion was not, however, exercised, except in cases where the offense tended to disturb or endanger the king's government, or to molest him in the regular discharge of his royal functions, and where delay would be dangerous.

There was another class of offenses of the same grade, which could be proceeded against by information filed by the master of the crown office—a person appointed as the king's attorney to prosecute in behalf of the public, on complaint made by a sub-

ject or by a common informer. This officer could not substitute an information for the indictment of a grand jury, unless upon a showing and leave of court. The practice was to present affidavits of the offense, and move the court for a rule on the accused to show cause, and if the affidavits were not sufficiently answered leave was granted to file a criminal information in cases below the degree of felony. 4 Bl. Comm. 308, 309, 311; 1 Chit. Cr. Law, 845, 846, 849, 856.

Now what changes have been produced by the constitution or laws of the United States, affecting the practice in form or substance, so far as regards the question at bar? Congress has passed no law on the subject, and the only constitutional provision affecting the question is the fifth amendment, proposed the same year that the original instrument went into operation—1789. It declares: "No person shall be held to answer for a capital or otherwise infamous crime, unless upon a presentment or indictment of a grand jury," &c.

Congress by proposing, and the states by ratifying that amendment, left all offenses not capital or infamous to be prosecuted by information or by indictment, as the circumstances of each case should seem to require, and as the common law would sanction. Indeed, this constitutional provision produced no change in the practice or law, except, perhaps, as regards a class of misdemeanors regarded as infamous crimes, and which might, before the amendment, be prosecuted by information. The amendment, however, fixed the matter, beyond the power of congress or the courts to alter the course of proceeding in bringing forward a charge of crime, in the class of cases embraced by the provision.

We regard the converse of the fifth amendment to be that persons may be held to answer for crimes other than such as are capital or infamous, upon information or indictment, according to the course of the common law. We have examined all the cases referred to by counsel, and find no well considered decision which conflicts with the views we have expressed, and therefore we conclude that, so far as the question rests on the common law, it is the right of the government, by its proper law officer, the district-attorney, to charge offenses against individuals through the forms and mode of informations.

There are, however, two considerations growing out of this subject, to which we should allude to give a proper understanding of our full views. It was said on the argument that the usage since the organization of the United States courts, has been to present offenders, in all classes of criminal cases, only through the instrumentality of a grand jury by indictment. If the practice of prosecuting by criminal information has fallen into disuse for eighty years, it certainly presents a strong reason for urging that such proceeding has become obsolete.

Our reply, however, is, that the fifth amendment, adopted almost at the start of the government under our present constitution, recognized the right to pursue the common law course by criminal information, in all but capital and infamous crimes. And if such rights existed then, not only at common law, but by clear implication in the fifth amendment, as we have shown, then, even though such right has been in abeyance for eighty years, there has been no abrogation of the power of the government to assert that right, particularly as the courts do not seem to have refused, by any well considered case, the exercise of such right, though we find some intimations by the courts adverse to its exercise.

The other consideration concerns the necessary preliminary steps before the right to file a criminal information can be asserted. We incline to the opinion and hold that there must first be a complaint, supported by oath or affirmation showing probable cause, followed by an arrest and examination, agreeably to section 33 of the act of September 24, 1789.

If the accused is held to bail or committed, the district-attorney, on filing the magistrate's or commissioner's return, with the proofs, will have leave to file a criminal information.

This course would seem as nearly adapted to the method of procedure in these courts, and to our laws, as any thing which suggests itself. It would certainly be quite foreign to any known practice in the United States courts to pursue the English practice of requiring a rule for the accused to show cause before the court, and there contest the question whether the evidence justified placing him upon trial.

The right of the accused to contest the probable cause shown by the prosecution is secured to him on his examination before the commissioner or magistrate, under the complaint on which he was arrested.

We ought, perhaps, to remark that the position assumed by the defendant's attorney, that the charge in this case involves a felony, is not sustained. The fact that the accused is liable on conviction to be imprisoned in the penitentiary does not determine the offense to be a felony. On the contrary, a felony at common law embraces only such crimes as are punished capitally. Nor is it an infamous crime; for if the defendant should be convicted on such charge it would not render him incompetent to testify as a witness, as would be the result if it were a crimen falsi. Neither does the charge necessarily involve perjury—which would be a crimen falsi, and infamous.

The information in this case, as we have shown, was filed without right or authority. The arrest and holding to bail were also unauthorized; and for both grounds the court must refuse to hold the accused to answer.

Motion granted.