GEORGE U. HIND, C. A. SPRECKELS, RUDOLPH
SPRECKELS, G. WEMPE, WM. CARSON, H. D.
BENDIXON, JAS. H. NELSON, M. O. SIVERSON,
F. O. JOHANSEN, GEO. A. NELSON, N. J. McLEOD,
G. M. FAGENLUND, J. S. HELLINGSEN, JOHN
PILTZ and HENRY WETHERBEE v. WILDER'S
STEAMSHIP COMPANY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED NOVEMBER 1, 1900.    DECIDED NOVEMBER 7, 1900.

FREAR, C.J., AND PERRY, J.

The power of this court to remand certain cases to the lower court is
not taken away by the statutes of the United States permitting such
cases to be taken from the courts of the Territory to a federal court
on appeal or writ of error. But in this particular case the court
makes the final complete decree itself.

The allowance of an appeal to a federal court is not a mere ministerial
act, but one of judicial discretion.

No appeal lies from this court to the United States Circuit Court of
Appeals under Section 15 of the Act of March 3, 1891, establishing
the Circuit Courts of Appeals, which provides for such appeals to
such courts in certain cases from Territorial supreme courts. Sec-
tion 86 of the Act to provide a Territorial government for these
islands puts the courts of this Territory on the same footing as the
courts of the several States as to writs of error from the Supreme
Court of the United States.

OPINION OF THE COURT BY FREAR, C.J.

This case having come on to be heard in this court on appeal
from a decree of a Circuit Judge of the First Circuit in admiralty
awarding the libellants $55,000 damages, an opinion was filed on

the 25th of last month, *ante* p. 112, concluding as follows: "We affirm the decree appealed from except as to the sum of five hundred and fifty dollars, proceeds of sale of the wreck, which sum should be deducted from the amount awarded below. This item was evidently overlooked in the preparation of the decree appealed from. The cause is remanded to the Circuit Judge of the First Circuit with instructions to modify the decree in accordance with these views." On the 30th the libellee filed a notice of appeal "to the United States Circuit Court of Appeals for the Ninth Circuit from the final opinion entered herein on the 25th day of October, 1900."

.The libellee now moves the court "to determine the amount of the bond to stay execution pending the appeal;" also "to grant a rehearing on the ground that the final decree in a suit in admiralty should be given in the Supreme Court of the Territory from which alone by the laws of the United States an appeal lies to the Circuit Court of Appeals;" and "so to modify the order herein entered in the decision of the above entitled cause on October 25, 1900, as to make the final decree for the libellants in the above entitled cause a decree of the Supreme Court of the Territory of Hawaii and not of an inferior court."

These motions were presented somewhat informally and with little argument and no citation of authorities and, by consent, in the absence of one of the Justices who took part in the opinion above referred to. No formal decree has been entered and so, strictly speaking, we presume the notice of appeal has been filed and the application for fixing the amount of the bond has been made prematurely. Under our practice it is customary for the appellate court to enter a formal decree even if only affirming the decree appealed from and remanding the case, and appeals from the lower courts to this court are allowed only from decrees as distinguished from opinions. We presume the Circuit Court of Appeals would hold that if an appeal lies at all from this court to that, it should be taken from the formal decree. See *Herrick v. Cutcheon*, 55 Fed. Rep. 6. Nor is this a case for a formal rehearing although a rehearing is asked for. We shall consider the

motions as applications for fixing the form of the decree in the exercise of the revisory power which courts have over their opinions or decisions prior to entry of formal decree or judgment, and for fixing the amount of the bond afterwards.

· The position cannot be sustained that the final complete decree must be entered in this court because, as contended, from it alone of the courts of this Territory an appeal can be taken to a federal court—whether the Circuit Court of Appeals or the Supreme Court. Appellate courts usually have power either to enter final complete decrees themselves or to remand cases to the lower courts. In the several States the statutes and practice upon this subject differ. In some the appellate court is required by statute to enter the decree itself; in others it is required to remand; in others the court may adopt either course and in some it prefers one course, in others the other course. It is a matter of local law and practice. The local law and practice is not controlled by the federal statutes relating to appeals and writs of error, nor on the other hand are the federal statutes rendered nugatory or the rights of a party desiring to appeal lost by reason of the local statutes and practice. For instance, the federal statutes provide for taking certain classes of cases from the highest court of a State in which a decision in the suit could be had, to the Supreme Court of the United States on writ of error, but no difficulty has been found in taking up such cases notwithstanding the diverse practice of the courts of the various States as to entering final judgments or decrees or remanding cases to the lower courts. See *Atherton v. Fowler*, 91 U. S. 143; *Wurts v. Hoagland*, 105 U. S. 702; *Polleys v. Black River Improvement Co.*, 113 U. S. 83; *McGuire v. The Commonwealth*, 3 Wall. 382; *Gelston v. Hoyt*, 3 Wh. 246.

The statutes now in force relating to the powers of this court in appeal cases are the same as were in force before the establishment of the Territorial government, and under them the court has always exercised its discretion as to entering final decrees or remanding cases, but has inclined to prefer the practice of remanding, at least since it became, nearly eight years ago, almost

purely an appellate court. In this particular case it apparently would make little difference to either party which course were pursued. The libellants would not be prejudiced in their rights by the entry of a final complete decree in this court. On the other hand if an appeal or writ of error lies in this case to a federal court, it would simplify matters to have the final decree here, especially as under our practice the original record is sent up on appeal from the lower court and would have to be sent back if the case were remanded. If the question as to which course should be pursued had been presented before the filing of the opinion, as it is now presented, we probably should have adopted the other course, that of entering the final decree here, and, it being still within our discretionary power to do this, we deem it best to do it. This is not, however, to be taken as a precedent even in cases which may be taken up from this court on appeal or writ of error. Each case will be considered on its own merits. Since this is the first in which an appeal is sought to be taken from this court, and since new questions of practice are involved, we deem it best to obviate difficulties as far as possible.

The other question, that of fixing the amount of the bond, is of greater importance. The libellee practically asks for the allowance of an appeal to the United States Circuit Court of Appeals of the Ninth Circuit. As already remarked, this is the first time an attempt has been made to appeal from this Court to a federal court. The motion raises new questions of practice of great consequence.

We understand that, if an appeal lies to the Circuit Court of Appeals from this Court, the citation and the approval of the bond may be signed by either a Justice of this Court or a Judge of that Court. Under Section 999 of the Revised Statutes, on a writ of error from the Supreme Court to a Circuit Court the citation may be signed by a Circuit Judge or a Supreme Court Justice; and under Section 702 final judgments and decrees of the Territorial Supreme Courts may be reviewed on appeal or writ of error in the same manner and under the same regulations as the final judgments and decrees of a Circuit Court. Hence

12

it follows that citations on such appeals may be signed by a Justice of the Territorial Court or a Justice of the Supreme Court. *Brown v. McConnell*, 124 U. S. 489. By Section 11 of the Evarts Act, establishing the Circuit Courts of Appeals, 26 Stat. 829, the same regulations are made applicable to appeals to and writs of error from the Circuit Courts of Appeals from and to the District and Circuit Courts; and by Section 15 of the same act the Circuit Courts of Appeals are given the same jurisdiction, in cases in which their judgments are final, by writ of error or appeal, to review the judgments and decrees of the Supreme Courts of the Territories as they have to review the judgments and decrees of the District and Circuit Courts. We infer therefore that if an appeal lies at all to the Circuit Court of Appeals from this Court, a Justice of this Court may sign the citation and approve the bond.

But is this a mere ministerial act to be performed as a matter of course upon every application, leaving it solely to the appellate court to say whether an appeal lies in the particular case or to that court in any case? It was decided in *Greeley v. Townsend*, 25 Cal. 604, and other cases there cited, under a somewhat similar statute relating to writs of error to State Supreme Courts from the Supreme Court of the United States, that this was not a mere ministerial act but an act of judicial discretion. If there were a serious question as to the right of appeal in the particular case or to the particular court, no doubt it would be advisable as a rule to allow the appeal and leave it to the appellate court to say whether it was properly allowed or not, but to allow appeals in all cases as matter of course would be simply to assist in many cases unscrupulous parties in suspending proceedings and delaying justice for great lengths of time on frivolous grounds. Of course, a refusal of a Justice of this Court to allow an appeal is not final. A party desiring to appeal may apply to any member of the appellate court either without applying here at all or after applying here unsuccessfully.

Is this a case in which an appeal should be allowed to the Circuit Court of Appeals of the Ninth Circuit? If in our opinion

it clearly is not, we do not care to countenance the view that it is or take any part in promoting a course of procedure that seems to us unauthorized. Counsel rely on Section 15 of the Evarts Act above referred to, which reads as follows:

"Sec. 15.    That the circuit court of appeal in cases in which the judgments of the circuit courts of appeal are made final by this act shall have the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several Territories as by this act they may have to review the judgments, orders, and decrees of the district court and circuit courts; and for that purpose the several Territories shall, by orders of the Supreme Court, to be made from time to time, be assigned to particular circuits."

So far as we are aware the Territory of Hawaii has not yet been assigned to any particular circuit, and if we should allow an appeal at the present time to the Circuit Court of Appeals for the Ninth Circuit, it would be only on the strong probability that if this Territory shall be assigned to any circuit, it will be to that Circuit. Whether it will be assigned to any circuit or not is a matter with which we have nothing to do. In view of the provisions of the Organic Act—the Act of April 30, 1900, to provide a government for the Territory of Hawaii—it may be deemed unnecessary to assign this Territory to any Circuit.

Aside from the question of the assignment of this Territory to the Ninth Circuit, this case would undoubtedly come within the terms of Section 15 referred to, for it is an admiralty case, and in admiralty cases the judgments of the Circuit Courts of Appeal are by Section 6 of the same Act made final. But in our opinion the Organic Act, a later and more particular statute, provides otherwise. Not indeed. by the provision, in Section 10, that "all actions at law, suits in equity, and other proceedings, then pending in the courts of the Republic of Hawaii shall be carried on to *final* judgment and execution in the corresponding courts of the Territory of Hawaii," for that was an interregnum clause the principal object of which was merely to bridge the chasm that would otherwise separate the Republic and the Territory and the word "final" was apparently used as distinguished

from "interlocutory" rather than as intending to cut off any right of appeal such as would exist in other similar cases if commenced after the change in the form of government occurred. In a certain sense all cases must be prosecuted to final judgment before an appeal can be taken, unless otherwise provided by statute. This clause is relied on as giving the Territorial courts jurisdiction to proceed in certain classes of cases already begun in them, which, like the present case, would otherwise come within the jurisdiction of the United States District Court.

The clause on which we rely is that found in Section 86 of the Organic Act, which reads:

"The laws of the United States relating to appeals, writs of error, removal of causes, and other matters and proceedings, as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the courts of the United States and the courts of the Territory of Hawaii."

This clause in our opinion places the courts of this Territory on the same footing as the courts of the several States so far as appeals to and writs of error from the federal courts are concerned, and, of course, cases may be taken, by writ of error, from the Supreme Courts of the several States to the Supreme Court of the United States alone. Appeals cannot be taken from such courts to the United States Circuit Courts of Appeals. The principal argument of counsel for the libellee and would-be appellant against this construction of the clause of the statute just quoted, is that the word "States" is used in a general sense as including both States and Territories, and that the intention was that only such laws relating to appeals with respect to either State or Territorial courts as should apply should govern, and that on an examination it is found that only the laws relating to appeals from Territorial courts apply to this case, that is, Section 15 of the Evarts Act. But that is a mere supposition with nothing to support it except that it serves counsel's purposes. There is everything against it. The presumption is very strong that Congress would not use the word "States" to include Territories in an act

and section of this kind. If it were speaking of the "United States" in a general statute, it might very well be taken to mean what is commonly called the United States, including both States and Territories. But here it used, not the words "United States" but the words "several States." It used them in a statute in which the distinction must have been emphasized and in which matters, such as appeals, writs of error and removals of causes, are provided for, the law as to which in respect to State courts was known to differ greatly from that in respect to Territorial courts and it cannot be supposed that Congress acted so carelessly as to provide that both sets of law should govern and then leave it to the courts to select which. Congress itself intended to do th; selecting by inserting this very clause. Furthermore these laws referred to in this clause contain the words "States" and "Territories" used in their proper sense, and Congress presumably continued to use them in this clause in the same sense.

It is true that this construction would make the decisions of this court final in most cases without the right of further appeal. But that would not be strange. In *Aztec Mining Co. v. Ripley,* 53 Fed. Rep. 7, counsel asked the court to depart from the plain meaning of Section 15 of the Evarts Act above quoted, on the ground that Congress could not have intended to limit the right of appeal to the extent required by that section if given full effect as it read. But the Circuit Court of Appeals said:

"It is true, as argued by counsel, that, if it be held that this court has not appellate jurisdiction in this class of cases, then the larger part of causes pending in the territorial courts cannot be appealed either to the supreme court of the United States or to the circuit courts of appeal, but in that respect the residents of the territories are only placed on an equal footing with the citizens of the several states. In the larger number of cases brought in the courts of the state, the only appeal is to the supreme court of the state, and in the territory of New Mexico there is a supreme court to which an appeal lies the same as in the several states."

See also *Ib.* 151 U. S. 79; *Folsom v. United States,* 160 U. S. 121.

There are special reasons for supposing that Congress intended to produce this very result here. It organized the courts and distributed their jurisdiction in this territory as it has done in no other territory—namely, on the lines of federal and state courts in the several States. It did not, as in Alaska, provide for only District Courts of the United States which had jurisdiction over local as well as over federal cases and which would be regarded as the supreme courts of the Territory within the meaning of Section 15 of the Evarts Act (*Steamer Coquitlam v. United States*, 163 U. S. 346), nor did it create only Territorial courts of the kind usually provided for Territories, which have jurisdiction of federal as well as local cases, and from which therefore appeals could be taken to the Circuit Courts of Appeals in several classes of cases under Section 15 of the Evarts Act. But it created both classes of courts—one with the jurisdiction of District and Circuit Courts of the United States, the other corresponding to the courts of a State, and, having done so, it naturally placed the two classes of courts on the same footing as to appeals and other proceedings as the corresponding federal and State courts elsewhere, that is, in the several States. Indeed, since the District Court here has the jurisdiction over such cases as may be appealed from the Supreme Courts of other Territories under Section 15, there would be no cases in our Territorial courts which would fall within the terms of that Section, except a few cases, such as the present case in admiralty, which were begun before the Organic Act took effect and remained in the Territorial courts under the provisions of Section 10 of that Act. If there were no provision in the Organic Act relating to appeals from courts here, we presume that appeals could be taken under Section 15 of the Evarts Act from both the District Court and the Supreme Court (see *Steamer Coquitlam v. United States, supra*), for each would be a court created by Congress in the exercise of its general powers over territory belonging to the United States and each would be a supreme court of the Territory with respect to the classes of cases of which it had jurisdiction. Congress, however, provided otherwise. It not

only organized the courts here on the lines of courts in the States, but it provided, in the clause immediately preceding that now in question quoted above from Section 86 of the Organic Act, that appeals from the District Court in this Territory should be had and allowed to the Circuit Court of Appeals of the Ninth Circuit in the same manner as appeals are allowed from Circuit Courts to Circuit Courts of Appeals, and then, as we believe and as might have been expected, in the clause in question, provided that appeals from the Supreme Court of this Territory should be governed by the laws governing appeals from the Supreme Courts of the several States. The fact that this Territory is so far removed from the mainland is ample to explain why Congress intended to make the judgments of our Supreme Court final except in cases in which a federal question was involved and to permit such cases to be taken up only as they would be taken up from a state court, that is, by writ of error from the Supreme Court of the United States. That such was the actual intention there can be no doubt. For instance, the Judiciary Committee of the Commission that drafted this bill, says with reference to this clause:

"By making the relations between the Territorial Courts of Hawaii and the Federal courts, as to appeals, removal of causes, etc., the same as the corresponding relations between the State and Federal courts, all cases of a local nature can be tried and determined finally in the islands, and thus the expense and delay of bringing such cases to the mainland, and possibly to Washington, a distance of 5000 miles, will be avoided." Report of the Hawaiian Commission, p. 162. This is quoted by Mr. Knox, Chairman of the House Committee on Territories, in his report upon this bill, p. 20. How far such reports accompanying a bill may be considered in construing it when it becomes a statute we need not say. In this case there is no occasion to consider them, for the statute is plain enough in itself.

The question whether this case may be taken to the Supreme Court of the United States by writ of error is not before us.

A decree in accordance with these views will be signed on presentation.

*Paul Neumann* for libellants.

*Kinney, Ballou & McClanahan*, and *H. A. Bigelow* for libellee.