# TERRITORY OF HAWAII *v.* MORITA KAIZO.

QUESTIONS RESERVED BY CIRCUIT COURT, FOURTH CIRCUIT.

SUBMITTED DECEMBER 23, 1905.     DECIDED JANUARY 3, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

CIRCUIT COURTS—*jurisdiction to naturalize.*

> Under the naturalization laws of the United States and the Organic Act the circuit courts of this Territory have power to naturalize.

### OPINION OF THE COURT BY WILDER, J.

#### (Hartwell, J., dissenting.)

Defendant was indicted for murder by a grand jury composed of sixteen members at the August, 1905, term of the circuit court of the fourth circuit. He filed a plea in abatement to the effect that eight of the members of the grand jury were aliens and therefore ineligible and incompetent to act. It appeared that some time between June 14, 1900, and August 1, 1905, each of said eight grand jurors being entitled to be naturalized applied for a judgment of naturalization to the circuit court of the fourth circuit, and upon such applications being considered the court pronounced upon each of the applicants a judgment of naturalization.

The following reserved questions were certified to this court:

1. Had the circuit court of the fourth circuit of the Territory of Hawaii between June 14, 1900, and August 1, 1905, jurisdiction to pronounce judgments of naturalization upon the eight aliens whose names are set forth in defendant's amended plea in abatement?

2.   Was the grand jury empaneled and sworn for the August, 1905, term of the circuit court of the fourth circuit comprising sixteen members, eight of whom were naturalized as aforesaid, a legal body under the laws of this Territory and competent to find a legal indictment against the defendant?

3.   Shall the defendant be held to answer the indictment thus found by said grand jury?

The main question for decision is whether under the naturalization laws of the United States and the Organic Act of this Territory the circuit courts of this Territory have power to naturalize.

Section 2165 of the revised statutes of the United States provides that aliens may be naturalized by a circuit or district court of the United States, a district or supreme court of a territory, or a court of record of any state having common law jurisdiction and a seal and clerk.

Section 81 of the Organic Act of this Territory provides as follows: "That the judicial power of the Territory shall be vested in one supreme court, circuit courts, and in such inferior courts as the legislature may from time to time establish. And until the legislature shall otherwise provide, the laws of Hawaii heretofore in force concerning the several courts and their jurisdiction and procedure shall continue in force except as herein otherwise provided."

Section 86 of the same act provides, among other things, as follows: "That there shall be established in said Territory a district court to consist of one judge, who shall reside therein and be called the district judge. * * * Said court shall have, in addition to the ordinary jurisdiction of district courts of the United States, jurisdiction of all cases cognizable in a circuit court of the United States, and shall proceed therein in the same manner as a circuit court. * * * The laws of the United States relating to appeals, writs of error, removal of causes, and other matters and proceedings as between the courts of the United States and the courts of the several states shall govern

in such matters and proceedings as between the courts of the United States and the courts of the Territory of Hawaii."

Prior to its annexation to the United States the Republic of Hawaii had a fully organized government, including a judicial system, consisting of courts of original and appellate jurisdiction, whose powers were defined by the constitltion and statutes of the republic.

The relations between the federal courts and the courts of this Territory are similar to those between federal courts and state courts. *Equitable Life Assurance Society v. Brown,* 187 U. S. 308; *Ex parte Wilder's S. S. Co.,* 183 U. S. 545; *Hind v. Wilder's S. S. Co.,* 13 Haw. 174. As was said in the last case cited congress "organized the courts and distributed their jurisdiction in this Territory as it has done in no other territory—namely, on the lines of federal and state courts in the several states." Page 182. On page 183 the reason for this was suggested as follows: "The fact that this Territory is so far removed from the mainland is ample to explain why congress intended to make the judgments of our supreme court final except in cases in which a federal question was involved, and to permit such cases to be taken up only as they would be taken up from a state court, that is, by a writ of error from the supreme court of the United States." That reason was approved in *Equitable Life Assurance Society v. Brown,* supra, at page 551, as follows: "Congress may have considered that, owing to the great distance of the Territory of Hawaii from the continent, the appellate jurisdiction over that territory should extend only, as in the case of the several states, to judgments against a right claimed under the constitution, laws or treaties of the United States." But whatever the reasons were, the effect was as stated.

Congress not having established within this Territory the ordinary territorial courts, and having provided a system similar to that in the several states, it follows that the jurisdiction to naturalize in this Territory should be and is the same as in a state, namely, by a court of record having common law juris-

diction and a seal and clerk. Each of our circuit courts is a court of record having common law jurisdiction and a seal and clerk. That this was the intention of congress we have no doubt, when it is considered that congress established in this Territory a district court of the United States, the same as is established in every state of the union, and which has, of course, power to naturalize.

The privilege of becoming an American citizen is a great one, but the number of courts with jurisdiction to naturalize should not be limited unless congress expressly or by necessary intendment so provides. The tendency of congressional legislation on the subject has been to enlarge rather than to diminish the number of courts which could naturalize. See *Ex parte Cregg,* 2 Curt. 98. The very reason for investing congress with power to establish a uniform rule of naturalization was to guard against a too narrow instead of a too liberal mode of conferring citizenship. *Collet v. Collet,* 2 Dall. 294. The statute intends naturalization certificates to issue from courts of record. *Spratt v. Spratt;* 4 Pet. 393, 408. See also *Mutual Benefit Life Insurance Company v. Tisdale,* 91 U. S. 245. All courts look with favor on proceedings to admit aliens to citizenship. *McCarthy v. Marsh,* 5 N. Y. 284. See also *Ex parte Butterworth,* 1 Woodb. & M. 223.

There is also considerable force in the argument that the courts in this Territory having practically the same jurisdiction as the ordinary territorial district courts, namely, the district court of the United States and the circuit courts of the Territory, have the power to naturalize. In *Ex parte Lathrop,* 118 U. S. 113, the legislature of the Territory of Arizona created and established a county court with concurrent jurisdiction with the district courts, the provision in the organic law of Arizona being that the "judicial power of Arizona shall be vested in a supreme court and such inferior courts as the legislative council may by law prescribe." The power of naturalization was expressly given to this county court. It was held this court

was an inferior court and that its jurisdiction could be made concurrent with that of every other court inferior to the supreme court. No comment was made upon this express power of naturalization. But, in view of the conclusion reached that any court of record in this Territory having common law jurisdiction and a seal and clerk has power to naturalize, it is unnecessary to say whether our circuit courts are territorial district courts within the meaning of the naturalization statute.

Defendant further contends that, even if the circuit court had jurisdiction to naturalize, still the grand jury was improperly constituted, because it does not appear that the eight members of the grand jury in question were naturalized before they were drawn to serve and that they might have been naturalized after having been selected. But the burden is on the defendant to show that they were aliens at the time they were drawn, and, as he has not done that, the presumption is that they were citizens at that time.

Each of the three reserved questions is answered in the affirmative.

*M. F. Prosser, Deputy Attorney General,* for the Territory. *Carl S. Smith* for defendant.


CONCURRING OPINION OF FREAR, C.J.


The statute (Rev. Sts., Sec. 2165) permits naturalization by "a circuit or district court of the United States, or a district or supreme court of the territories, or a court of record of any of the states having common law jurisdiction, and a seal and clerk." Thus the jurisdiction is conferred on federal, state and territorial courts. If the circuit courts of this Territory have it, it must be because they are "district courts" of a territory within the meaning of the statute. The question then is whether the word "district" in the statute is a word of description or a proper name. If it is the latter and refers only to such courts of that name as have been created by congress in other

territories the statute does not apply to our circuit courts. If it is descriptive there is no reason why it should not apply.

There is little in a name. Our district courts corresponding most nearly to justices' courts elsewhere do not have jurisdiction to naturalize although they are "district courts" of a territory, nor could our territorial legislature confer such jurisdiction upon even a court of record of general jurisdiction by merely calling it a district court. Even the United States district court of Hawaii does not have this jurisdiction because it is called a district court, though by Act of Congress, because on the one hand it is not a district court of the United States in the sense of a constitutional court, for it is a legislative court just as our circuit courts are, nor on the other hand is it a district court of a territory, for not only does it not have the jurisdiction of such a court in general, but it is a court for the entire Territory. It has such jurisdiction because it has been expressly given the jurisdiction of a circuit and district court of the United States.

It is true that our circuit courts differ from the district courts of other territories in various respects. For instance, they are presided over by their own circuit judges and not by judges of the supreme court assigned to the circuits or districts. They also do not have the combined federal and territorial jurisdiction, but are more like state courts in having the local jurisdiction only. But they are courts of record of general, original, common law jurisdiction, and there is no reason why congress, in distributing the two classes of federal and territorial jurisdiction between two sets of courts in Hawaii, instead of combining them in the same courts as elsewhere, should not have intended that each set should have jurisdiction to naturalize. There can be no doubt that the supreme court of this Territory has such jurisdiction, although that, equally with the circuit courts, has only territorial and not federal jurisdiction. The name "circuit courts" was retained by congress because that name was already in use here.

That the word "district" should be construed in a descriptive sense with reference to territories, is supported by the fact that congress itself so construed the same word with reference to the states when, after conferring jurisdiction to naturalize upon the "supreme, superior, district or circuit court of some one of the states" by the act of 1795, it provided as follows in the act of 1802 (2 St. at L., p. 155): "And whereas, doubts have arisen whether circuit courts of record in some of the states, are included within the description of district or circuit courts: Be it further enacted, that every court of record in any individual state, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered as a district court within the meaning of this act."

Not only is there no objection to the exercise of such jurisdiction by such circuit courts, for similar courts throughout the states and territories exercise it, but it is particularly desir·able that they should have it because in four of the five circuits of the Territory the supreme court cannot sit and in three the United States district court does not sit and in one of the other two the latter court sits only once a year, although it is permitted by the statute to sit at other times and places; and such time and expense would be required for the attendance of applicants where such courts usually sit as would in many instances be prohibitive. Such jurisdiction has been exercised by the circuit courts ever since the establishment of territorial government and probably the majority, about a thousand, of naturalizations, have taken place in those courts. I believe the exercise of such jurisdiction by the circuit courts was begun on the suggestion of United States District Judge Estee, and more recently an application to his successor, Judge Dole, for naturalization by one whose naturalization by a circuit court had been questioned, was denied.

On the whole, although with much doubt, I am of the opinion that the circuit courts have such jurisdiction.

### DISSENTING OPINION OF HARTWELL, J.

Congress alone can authorize a court to naturalize aliens. The only authority by which aliens can be naturalized in Hawaii is that which is granted to the federal court and to "a district or supreme court of a territory" by Sec. 2165, U. S. Rev. Stat. Unlike our circuit courts territorial district courts in other territories than Hawaii are held by one of the justices of the territorial supreme court and, by act of congress, have jurisdiction "of all matters and causes except those in which the United States is a party," including therein admiralty and bankruptcy matters.

It would be convenient to residents upon other islands than Oahu who desire to become naturalized to be able to go before the circuit courts upon those islands for that purpose although the federal court has authority to hold terms in any circuit whenever applications are pending there in sufficient number to justify the holding of a term. Probably congress will amend the Organic Act to give our circuit courts the power to naturalize, which at present they do not have unless we regard them as included in the term "district courts of a territory." This cannot be done without changing the clearly expressed language of an act of congress, doing this upon the theory that the act means something different from what it says. Every departure from the clear language of a statute is in effect an assumption of legislative powers by the court. *Brewer v. Blougher,* 14 Pet. 178. Whenever harm or absurdity results from taking a statute to mean just what it says all reasonable effort ought to be made to evade the literal meaning on the ground that congress is not presumed to have intended such results, but here no such results will occur from restricting naturalization to this court and the federal court; the only loss would be in costs which have been paid by those who have become naturalized in circuit courts and in cases of renaturalization such costs ought to be remitted. Undoubtedly it was an oversight that the Organic Act did not at first give this power to our circuit courts, but

we have no authority to supply the omission. "A case which has been omitted is not to be supplied merely because there seems to be no good reason why it should have been omitted, and the omission appears consequently to have been unintentional." Endlich, Int. St. Sec. 18. For this court to declare that circuit courts have jurisdiction for the purpose of naturalizing aliens would be practically the same as enacting a law to that effect, doing this upon the theory that congress intended that our circuit courts should have like powers with state courts of record in respect of this matter of naturalization; or else upon the theory that congress really meant that our circuit courts should take the place of the district courts in the other territories. There is no reason why this court should indulge in any presumptions concerning a statute which is so clearly expressed as to leave no occasion for its interpretation or construction.

As I regard the statute as too clear to admit construction of its meaning and as its express language does not authorize naturalization by our circuit courts, I am unable to concur in the opposite conclusion of the court.