UNITED STATES OF AMERICA v. GEORGE A. BOWER.

June 24, 1914.

*Criminal Law—Practice; application of Territorial statutes to United States District Court:* A statute in force in the Hawaiian Islands at the time of their annexation to the United States and continued in force in the Territorial courts, providing that the successive disagreement of two juries in a criminal case shall operate as an acquittal, does not govern the United States District Court for the Territory of Hawaii.

*Criminal Law:* Motion for discharge of defendant.

*Jeff McCarn,* U. S. District Attorney, and *J. W. Thompson,* Assistant U. S. Attorney, for the United States.

*E. A. Douthitt* and *L. M. Straus* (*J. L. Coke* with them) for defendant.

CLEMONS, J. The jury having disagreed in two successive trials of the defendant on an indictment for adultery, his counsel move for his discharge on the ground of the applicability of section 2822 of the Revised Laws of Hawaii of 1905, providing in part as follows:

"The successive disagreement of two juries impaneled to try the cause, shall operate as an acquittal of the accused, and the court shall order his discharge from custody."

The defendant contends that this rule of Territorial law, in force in Hawaii since 1876 (S. L. 1876, c. 40, s. 3), is made applicable to the Federal court by section 83 of the Organic Act (31 Stat. c. 339, p. 157), which provides that "the laws of Hawaii relative to the judicial department, including civil and criminal procedure, except as amended by this act, are continued in force."

This contention overlooks the obvious fact that section 83 contemplates the "judicial department" of the Territory and not that of the United States,—not only as indi-

cated by the words "judicial department" in their immediate context, but by the fact that chapter IV of the Organic Act, in which this section occurs, relates to "the judiciary of the Territory" (see chapter title) and "the judicial power of the Territory" (see section 81); and by the fact also that section 86, pertaining to the Federal court, is placed in a separate, later chapter entitled "United States officers", thus distinguishing them from Territorial officers provided for elsewhere.

Moreover, the contention is contrary to the well-settled intent of the Organic Act: "The Territory of Hawaii is in every particular, except sovereignty, in the position of a State; certainly in that position so far as its courts are concerned." *United States v. Morimoto*, 2 U. S. Dist. Ct. Haw. 396, 399; *Wilder's S. S. Co. v. Hind*, 108 Fed. 113, 116; *Ex. p. Wilder's S. S. Co.*, 183 U. S. 545, 551; *Equitable L. A. Co. v. Brown*, 187 U. S. 308, 309; *Territory v. Carter*, 19 Haw. 198, 200, 201; *Territory v. Martin*, Id., 201, 202-205, 213-214; *Territory v. Morita Keizo*, 17 Haw. 295, 297-299; *Bierce v. Hutchins*, 18 Haw. 511, 518. The practice of the United States District Court must, then, be governed in the same way as practice in the Federal courts in the States. See Organic Act, sec. 86.

This brings us to another contention, less strongly relied on by counsel but more difficult to dispose of, that section 2822 of the Revised Laws is effective here because in matters of practice not otherwise provided for, this court must follow the practice existing in Hawaii at the time of annexation. In support of this contention, reliance is had upon the ruling in *United States v. Moore*, 3 U. S. Dist. Ct. Haw. 66, and the cases therein cited.

In the *Moore* case and the more recent case of *United States v. Morimoto*, supra, as also in the cases of *United States v. Reid*, 12 How. 361; *Logan v. United States*, 144 U. S. 263, and *Withaup v. United States*, 127 Fed. 530, which the *Moore* and *Morimoto* cases follow, it was held

that "the rules of evidence governing Federal courts in
criminal trials are those which were in force in the State
[or Territory] at the time such courts were established
therein, subject to such changes as have been made by
Congress." 127 Fed. 530, par. 2.

The reasoning of Chief Justice Taney in the leading case
of *Reid,* supra, may seem to justify the following not only
of such local rules of evidence, but of such local rules of
practice in general, as were in force at the time of the
establishment of the Federal court in the particular dis-
trict. He says, at pages 365-366:                               •

"Neither of these acts [the Judiciary Act of 1789, 1
Stat. 73, 88, and the Crimes Act of 1790 , 1 Stat. 112, 118]
make any express provision concerning the mode of con-
ducting the trials after the jury are sworn. They do not
prescribe any rule by which it is to be conducted, nor the
testimony by which the guilt or innocence of the party is
to be determined. Yet, as the courts of the United States
were then organized, and clothed with jurisdiction in crim-
inal cases, it is obvious that some certain and established
rule upon this subject was necessary to enable the courts
to administer the criminal jurisprudence of the United
States. And it is equally obvious that it must have been
the intention of Congress to refer them to some known
and established rule, which was supposed to be so familiar
and well understood in the trial by jury that legislation
upon the subject would be deemed superfluous. This is
necessarily to be implied from what these acts of Congress
omit, as well as from what they contain.

"But this could not be the common law as it existed
at the time of the emigration of the colonists, for the Con-
stitution had carefully abrogated one of its most impor-
tant provisions in relation to testimony which the accused
might offer. It could not be the rule which at that time
prevailed in England, for England was then a foreign coun-
try, and her laws foreign laws. And the only known rule
upon the subject which can be supposed to have been in
the minds of the men who framed these acts of Congress,
was that which was then in force in the respective states,
and which they were accustomed to see in daily and

familiar practice in the state courts. And this view of the subject is confirmed by the provisions in the act of 1789, which refers its courts and officers to the laws of the respective states for the qualifications of jurors and the mode of selecting them. And as the courts of the United States were in these respects to be governed by the laws of the several states, it would seem necessarily to follow that the same principles were to prevail throughout the trial: and that they were to be governed in like manner, in the ulterior proceedings after the jury was sworn, where there was no law of Congress to the contrary.

"The courts of the United States have uniformly acted upon this construction of these acts of Congress, and it has thus been sanctioned by a practice of sixty years. They refer undoubtedly to English works and English decisions. For the law of evidence in this country, like our other laws, being founded·upon the ancient common law of England, the decisions of its courts show what is our own law upon the subject where it has not been changed by statute or usage. But the rules of evidence in criminal cases, are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. Congress may certainly change it whenever they think proper, within the limits prescribed by the Constitution. But no law of a state made since 1789, can affect the mode of proceeding or the rules of evidence in criminal cases."

Circuit Judge Swayne, in *United States v. Ambrose,* 3 Fed. 283, 285, summarizes the ruling in the *Reid* case as follows:

"The case of the *United States v. Reid,* 12 How. 361, lays down the proposition, and maintains it unanswerably, that, as regards all criminal proceedings and jurisprudence in the courts of the United States, the courts of the United States are in no wise bound by state laws or state practice in anything."

But the rule applied in the *Reid* case, and in the cited cases which follow it, was adopted as a rule of necessity. The Supreme Court there decided that, as the Judiciary Act referred the selection and qualification of jurors in United States courts to the practice then existing in the several

States, respectively, it would seem necessarily to follow that the courts "were to be governed in like manner in the ulterior proceedings after the jury was sworn, *where there was no law of Congress to the contrary*" (it being noted that "ulterior proceedings" within the contemplation of the question before the court, related only to the competency of witnesses, rules of evidence), *United States v. Reid*, supra, 361, 365,—in other words, that as the Judiciary Act recognized the State practice at the time of the court's creation, as governing the selection and qualification of jurors, the court, for rules and practice governing the trial for which such jurors were selected and qualified, would recognize the same convenient authority as perhaps within the intent of the act. This conclusion, although not very clearly within the act, is yet in harmony with its spirit, especially with the safeguarding words, "where there is no law of Congress to the contrary". This is about as far as the Supreme Court could go in that direction. And the *Reid* case is not, in the opinion of this court, a precedent for recognizing authority in an Hawaiian statute existing at the time of annexation, by which the freedom of prosecutions under a Federal statute is to be curtailed. Are not the acts of Congress by which this court is created and its powers given, necessarily, though impliedly, contrary to the local statutory rule? Do they not exclude it? Or, in other words, is not the local statute itself inconsistent with the Federal statutes? The *Reid* case provides for an obvious necessity, an emergency. No such element exists in the case at bar. The situation is provided for by the natural course of things: there is no obstacle to further proceedings.

It is a startling proposition that a Federal court should in the absence of legislation, be compelled to follow every rule of practice in force in the local courts at the time the district is brought under Federal jurisdiction, even, it may be, a century or more before,—as in the case of the thirteen original colonies, or of the first admitted States,—unless it

be in cases of extreme necessity." And it is safe to say, that no Federal court regulates its practice in general by any such guide. No reason can be seen for giving unqualified application to a rule which arose only as a rule of necessity: let it be applied in cases of necessity, but not where its application would curtail the court's inherent powers. For instance, must this court adopt the rest of section 2822 of the Revised Laws and declare an acquittal in every case in which there is "a failure to prosecute upon an information or indictment at the term at which the same is presented against the accused, unless the venue be changed or the case be postponed by the court?"

It may be well to remove some misunderstanding of the rule which might appear from the four authorities about to be noted. In the case of *United States v. Maxwell,* 26 Fed. Cas. 1221, 1222, No. 15,750, Judge Dillon states: "Congress has never enacted a code of criminal procedure, and the States have no power to prescribe either modes of procedure or rules of evidence in prosecutions for Federal offenses. In a general way the Federal courts must be governed in these respects by the common law with the modifications pointed out by the Supreme Court. *United States v. Reid,* 12 How. 361." But Judge Dillon's reference to the *Reid* case clearly implies a qualification of the terms "the common law" to mean "the common law as modified by local law in force at the time of the court's organization" and subject to the provision, "no law of Congress to the contrary". What has just been said of the *Maxwell* case applies to the case of *United States v. Shepard,* 27 Fed. Cas. 1056, No. 16,273, q. v. at 1058.

In *United States v. Coppersmith,* 4 Fed. 198, 204–205, the broad rule just quoted from the *Maxwell* case is qualified by referring to "the laws and usages of the State when the judicial system was organized", "in all matters respecting the accusation and trial of offenders, not otherwise provided for". This concluding proviso would, if taken in a

broad sense, distinguish the *Coppersmith* case, and indicate an intent to limit the application of the rule to contingencies of actual necessity.

Foster states that, as a general rule, Federal courts in the several States do not adopt the local procedure, but "follow the old practice at common law, except so far as the same have been changed by a Federal statute." 2 Foster, Federal Practice, 5th ed., 1615, sec. 483. This statement, also, may be misleading, unqualified as it stands; for the learned author, though citing the *Reid* case, notes no limitation with respect to local practice as existing at the time of the Federal court's organization, or otherwise, and fails to cite the *Logan* case, or to cite anywhere in his book Judge Van Devanter's notable opinion in the *Withaup* case.

Counsel's main reliance upon the decision in the *Moore* case, supra, lies, however, in the idea, somewhat difficult to comprehend, that inasmuch as the rule of evidence there enforced was based upon the removal of a disability existing at common law, viz., the disqualification of certain persons as witnesses, so here, as the local rule, Revised Laws of Hawaii, section 2823, removes a disability, as it were, or rather creates a privilege or right, this court must enforce it just as it enforced the right or privilege in the *Moore* case. And in this connection it is urged that section 2822 provides for matter of substance and not mere procedure. It is enough to say that this argument does not truly reflect the basis of the *Moore* decision or of the leading cases of *Reid* and *Withaup* upon which it is founded.

Another decision relied on by counsel is that of *Britton v. Thornton*, 112 U. S. 526, 534-535, holding that a "statute giving a conclusive effect to judgments in ejectment, which they did not have at common law, establishes a rule of property concerning the title to land within the State of Pennsylvania, and binds the courts of the United States as well as the courts of the State." There the statute made

conclusive two successive verdicts, or two out of three verdicts, for the same party. The opinion in the leading case of *Miles v. Caldwell,* 2 Wall. 35, cited in the *Britton* case, held a local statutory provision, making "judgment in ejectment a bar to certain future suits, to be a rule of property," and Mr. Justice Miller said: "It is a matter which involves something more than a mere rule of practice. It is a question whether a matter, which is conclusive of the title to land in the State courts, shall have the same effect in the Federal courts." *Miles v. Caldwell,* supra.

Aside from the rule-of-property basis for this decision, it would have been justified by the fact that the case was civil, and governed by Revised Statutes, section 914, adopting local rules of practice, if practice were involved, or at all events by Revised Statutes, section 721, adopting local laws as rules of decision "in trials at common law . . . in cases where they apply", if substantive law were involved. See *Burgess v. Seligman,* 107 U. S. 20, 33.

Something may possibly be said,—though I am not yet persuaded of its soundness,—in justification of an argument that Revised Laws of Hawaii, section 2822, is not a rule of mere procedure at all, and, therefore, not within the rule in the *Reid, Withaup,* and *Moore* cases; that procedure provides mere means, manner, or method of reaching a judicial determination, while a statutory declaration, as here, of the effect of certain facts, partakes, rather, of the nature of substantive law. Suggestive language of Mr. Justice Holmes, in a recent decision, lends support to such an argument, to quote but a single sentence from an illuminative context: "The substantive portion of the section [of the statute of limitations as to crimes] is that no person shall be tried for any offense not capital except within a certain time." *Gompers v. United States,* decision of the United States Supreme Court, May 11, 1914 [233 U. S. 604, 611]. The logic of this view would seem to be, that the statute here in question, itself a kind of statute of

limitations, is one of substantive, rather than of adjective law. The distinction is close, recalling other language of the same jurist: "Whenever we trace a leading doctrine of substantive law far enough back, we are very likely to find some forgotten circumstance of procedure at its source." Holmes, Common Law, 253.

The parol evidence rule, also, may be cited as an example of the supposed distinction. Mr. Wigmore says, "the rule is in no sense a rule of evidence, but a rule of substantive law. . . What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all." 4 Wigmore, Evidence, 3369, sec. 2400. And see Id. sec. 2401; Harriman, Contracts, 2nd ed., sec. 61.

But it may be said, granted that the parol evidence rule is a rule of substantive law rather than of evidence, nevertheless it is applied practically as a rule of evidence. See 1 Chamberlayne, Evidence, sec. 1710. To this, even if true, it need only be replied, as already indicated, that the urged rule, of applying local procedure, is not regarded as binding upon the Federal courts in matters which are clearly not mere matters of ways and means but are rather matters of substance: the substantive phase is dominant. See the *Gompers* case, ubi sup. And, of course, in Federal criminal law nothing is substantive except as Congress has declared it.

But in denying the motion, without further discussion, I rely on the already sufficiently justified regard of the rule in the *Reid* case as a rule of necessity, not to be applied in this case where its application is not only uncalled for, but where its application would be inconsistent with the inherent, natural, powers of the court. The provision of section 2822 may be wise, but it does not govern this court. Let the motion be denied.